Phyllis FALCONER,
Petitioner–Appellee,

v.

Michael P. LANE and Neil F. Hartigan,
Respondents–Appellants.

No. 89–2895.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1990.

Decided June 29, 1990.

Louis B. Garippo, Lydon & Griffin, Chicago, Ill., for petitioner-appellee.

Kenneth A. Fedinets, Richard S. London, Asst. Attys. Gen., Chicago, Ill., for defendant-appellant.

Kenneth A. Fedinets, Richard S. London, Asst. Attys. Gen., Chicago, Ill., for respondent-appellant.

Before BAUER, Chief Judge, CUMMINGS and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

At her state court trial for murder, Phyllis Falconer attempted to prove that she killed her husband only in self-defense. The jury was instructed to consider the lesser offense of voluntary manslaughter. The jury nonetheless convicted Mrs. Falconer of murder and she was sentenced to 24 years in prison. Following a series of appeals described below, her second collateral attack on her conviction prevailed in district court. *United States* ex rel. *Falconer v. Lane*, 720 F.Supp. 631 (N.D.Ill. 1989). Paralleling a holding of the Illinois Supreme Court in a separate case, the district court held that the petitioner was denied due process because the instructions given to the jury at trial allowed the jury to return a verdict of murder even if the jury made findings that should have resulted in a verdict of voluntary manslaughter. We agree that the instructions were constitutionally inadequate under the Fourteenth Amendment's Due Process Clause and therefore affirm.

I.

The facts of the petitioner's criminal case presented in the Circuit Court of Kane County, Illinois, are set out in the state appellate court opinion and two district court opinions discussed below and do not bear extensive repetition. The petitioner stabbed her husband with a knife two times, once fatally, in their home on the morning of May 26, 1986. The State sought to prove at trial that during an altercation between the two the petitioner delivered the fatal blow to the victim's back while the victim fled from her. The petitioner sought to prove that the decedent had physically abused the petitioner for many years (they were married two times for a total of 26 years of marriage), that at the time of the stabbing she was seriously ill, and that she stabbed him only in self-defense and in a confused state of mind immediately after he angrily confronted her and slapped her hard in the face.

On November 20, 1986, the petitioner

was convicted of murder[1] and shortly thereafter received her sentence. She appealed her conviction to the Appellate Court of Illinois, Second District, on various grounds, none of which directly raised the constitutional validity of the jury instructions.[2] That direct appeal was denied in a published opinion in April 1988. *People v. Falconer*, 168 Ill.App.3d 618, 119 Ill.Dec. 241, 522 N.E.2d 903. The petitioner promptly filed a petition for leave to appeal from that decision to the Illinois Supreme Court.

About two months thereafter, before it had acted on Mrs. Falconer's petition, the Illinois Supreme Court held in a separate, consolidated case that it was "grave error" to give instructions identical to those given at petitioner's trial. *People v. Reddick*, 123 Ill.2d 184, 198, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). The *Reddick* Court first held that where a defendant on trial for murder asserts that, even if not fully justified as one would be in killing another in self-defense, the defendant acted either under sudden and intense passion resulting from serious provocation or else in the unreasonable belief that circumstances existed that would have justified the killing (self-defense), the State bears no burden of proof regarding those claims in order to secure a voluntary manslaughter conviction. *Id.* at 195, 122 Ill.Dec. 1, 526 N.E.2d 141. Instructions to the contrary were seriously defective, the Court held, because they directed the jury that it could find a defendant charged with murder guilty of voluntary manslaughter only if the *State*

proved one of those two mitigating mental states on the part of the defendant.

A second holding of the Court is even more important to this appeal. The Court held that if a defendant in a murder trial presents sufficient evidence to raise these mitigating "manslaughter defenses" of serious provocation or unreasonable belief of justification, the jury must be instructed that in order to return a verdict of murder the State must have proved beyond a reasonable doubt that those defenses are without merit. *Reddick*, 123 Ill.2d at 197, 122 Ill.Dec. 1, 526 N.E.2d 141.

Two months thereafter, the Illinois Supreme Court granted petitioner's motion for leave to supplement her petition for leave to appeal. Her supplement raised *Reddick* as the basis for relief on due process grounds. Nevertheless, the petition was denied without any comment by the Illinois Supreme Court in September 1988. *People v. Falconer*, 122 Ill.2d 583, 125 Ill. Dec. 226, 530 N.E.2d 254.

In December 1988, Mrs. Falconer filed a petition for habeas corpus redress in the United States District Court for the Northern District of Illinois. The petition was denied as premature under 28 U.S.C. § 2254(c) after the State asserted that the petitioner had yet to attempt to exhaust potential remedies under the Illinois post-conviction statute, Ill.Rev.Stat. ch. 38, ¶ 122–1. *United States* ex rel. *Falconer v. Lane*, 708 F.Supp. 202, 205 (N.D.Ill.1989). The district court was motivated to find that the petitioner's claims had not been exhausted in part because the State assured the court that *res judicata* would not

---

1. A person who kills an individual without lawful justification commits murder if in performing the acts which cause the death she either intends to kill or do great bodily harm to that individual or knows that such acts will cause the individual's death. Ill.Rev.Stat. ch. 38, ¶ 9–1(a)(1) (1985).

A person commits voluntary manslaughter if she kills an individual without lawful justification while acting under either sudden, intense passion due to serious provocation or an unreasonable belief that force justifiably prevented imminent death or great bodily harm to herself. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. Ill.Rev.Stat. ch. 38, ¶¶ 9–2, 7–1 (1985).

2. The first two grounds were in the alternative: (1) she was not proved guilty of murder beyond a reasonable doubt because the evidence established self-defense; (2) she was proved guilty of, at most, voluntary manslaughter because the evidence established that she was engaged in physical combat with the victim when she delivered the fatal blow. The other two grounds were that the prosecutor made improper closing arguments and that she was denied effective assistance of counsel because her attorney was improperly prepared for trial and failed to object to the prosecution's allegedly improper closing argument. *People v. Falconer*, 168 Ill.App.3d 618, 119 Ill.Dec. 241, 522 N.E.2d 903 (1988).

bar her claims in state court. *United States* ex rel. *Falconer v. Lane*, 720 F.Supp. 631, 639 (N.D.Ill.1989).

Consequently, as the State virtually invited her to do, the petitioner promptly filed a petition for post-conviction relief in Kane County Circuit Court, continuing to raise the *Reddick* ground that the combination of murder and manslaughter jury instructions given at her trial violated her constitutional rights to due process and a fair trial. In response, the State moved to dismiss the post-conviction petition. This time the State asserted that the Illinois Supreme Court's denial of her petition for leave to appeal barred relief on *res judicata* grounds! The state trial court agreed that the state Supreme Court's denial of leave to appeal constituted a decision on the merits barring further judicial review by the state courts and dismissed her post-conviction petition.

Because the State was successful in its *res judicata* argument before the state trial court, Mrs. Falconer, instead of continuing to press her action for post-conviction relief in the Illinois courts, filed a second petition for writ of habeas corpus in federal district court. That is the action under consideration in this appeal. Again she maintained that the jury instructions given at her trial violated her right to due process. This time the district court reached the merits of her claim and found in her favor. The district court ordered the State to alter her conviction from murder to voluntary manslaughter and resentence her on that conviction, or to retry her for murder within 120 days. *Falconer*, 720 F.Supp. at 645.

The district court found that the first concern of the *Reddick* Court was avoided in the petitioner's trial. That was the concern that in a murder case in which voluntary manslaughter is offered to the jury as a lesser-included offense the jury would be effectively prevented from returning a voluntary manslaughter verdict if it followed the instruction that the State has the sur-

prising and discordant duty of also proving the mitigating "manslaughter defenses" at the same time it also attempts to win a murder conviction. The district court found that this problem was eliminated from the petitioner's trial because the trial record as a whole reflects that the state trial court adequately informed the jury that it should convict the petitioner of voluntary manslaughter if it determined, from evidence produced by either side, that she was entitled to those mitigating defenses. *Falconer*, 720 F.Supp. at 643 n. 6. While the potential for confusion was considerable, we agree with the district court that this improper voluntary manslaughter instruction was probably "cured" by other statements of the trial court and therefore does not rise to the level of a constitutional violation.

On the other hand, the district court found that the *Reddick* Court's second concern had not been dispelled at the petitioner's trial. This second concern was that if a defendant in a murder trial presents sufficient evidence to raise the mitigating "manslaughter defenses," the jury must be instructed that in order to return a verdict of murder the State must have proven beyond a reasonable doubt that those defenses are without merit. *Reddick*, 123 Ill.2d at 197, 122 Ill.Dec. 1, 526 N.E.2d 141. The district court in this case was troubled by the fact that the jury was never informed that in the event it did find one of the mitigating states of mind it could not convict the petitioner of murder. *Falconer*, 720 F.Supp. at 643–44. Once the state trial court determined that the jury could find the petitioner guilty of voluntary manslaughter and decided to read an instruction on that lesser-included offense, it was required under the due process guarantee to inform the jury of the fact that proof of one of the mitigating states of mind would nullify the State's murder case. *Id.*

We have jurisdiction under 28 U.S.C. § 1291 to hear the State's appeal. We affirm.[3]

---

**3.** That portion of the district court's judgment which orders the State, as an alternative to retrial, to reduce Mrs. Falconer's conviction to one for voluntary manslaughter and to sentence her accordingly is apparently based upon Illi-

## II.

Relevant jury instructions used at the petitioner's trial came from various homicide instructions found in the Illinois Pattern Jury Instructions, Criminal Nos. 7.02 (murder), 7.04 (voluntary manslaughter—provocation), 7.06 (voluntary manslaughter—belief of justification), and 24–25.06 (use of force in defense of a person).[4] They are reproduced at length in the district court's second opinion in this case. *Falconer*, 720 F.Supp. at 633–34. The jury was told that to sustain a charge of voluntary manslaughter the State had to prove either that the defendant "acted under a sudden and intense passion resulting from serious provocation by another" or that the defendant held an unreasonable belief that circumstances existed which would have justified the killing. The jury was also given the elements necessary to sustain a charge of murder, which did not specifically include the "manslaughter defenses" of provocation or unreasonable belief of justification. Finally, to avoid a murder conviction, a defendant must have "reasonably" believed that the use of force against the decedent was necessary to defend herself against "the imminent use of unlawful force."

In order to return the murder verdict, then, the jury was required to find that the petitioner was not completely justified in using the deadly force that she used. Yet the jury was not told that if it found that she had acted with some lesser level of justification it could not convict her of murder. Addressing identical jury instructions

in *Reddick*, the Illinois Supreme Court ruled that the instructions constituted "grave error," requiring each defendant in that case to be given a new trial regarding his murder conviction. *Reddick*, 123 Ill.2d at 199, 122 Ill.Dec. 1, 526 N.E.2d 141.

### A. Procedural Default

 Before addressing the substance of the State's appeal, we must consider the State's various arguments that the petitioner is not entitled to seek a writ from the district court. The State contends that the petitioner may not seek relief in the federal courts because she did not object to the challenged instructions at trial. If the Illinois courts would not preclude the petitioner's claim under a contemporaneous-objection rule, it may be reviewed in a federal habeas corpus proceeding. See *Wainwright v. Sykes*, 433 U.S. 72, 85–86, 97 S.Ct. 2497, 2505–06, 53 L.Ed.2d 594. Under Illinois Supreme Court Rule 451(c) the petitioner cannot be collaterally estopped for submitting these pattern instructions, approved for Illinois criminal trials until *Reddick* invalidated them, if waiver would run contrary to "the interests of justice." We would be hesitant to save an otherwise forfeited claim through application of the Illinois "interests of justice" exception without guidance from the Illinois courts. In this case, however, the Illinois Supreme Court has spoken clearly. That Court applied its Rule 451(c) in *Reddick* under identical circumstances. *Reddick*, 123 Ill.2d 184, 198, 122 Ill.Dec. 1, 526 N.E.2d 141. Therefore, the petitioner did not forfeit her

nois Supreme Court Rule 615(b)(3), which provides

**(b) Powers of the Reviewing Court.** On appeal the reviewing court may:

\* \* \* \* \* \*

(3) reduce the degree of the offense of which the appellant was convicted. 107 Ill.2d 563 (1985).

See, *e.g., People v. Davis*, 112 Ill.2d 55, 63, 96 Ill.Dec. 693, 491 N.E.2d 1153 (1986). It is of course for the Illinois courts to determine whether the petitioner should be resentenced for voluntary manslaughter under Rule 615(b)(3) or any other Illinois law. See *United States* ex rel. *Townsend v. Twomey*, 493 F.2d 1325, 1326 (7th Cir.1974) (quoting mandate of this Court that defendant was to be resentenced

without retrial "provided such procedure is appropriate under the Illinois law"). The alternative to doing so is retrial.

**4.** These instructions have been rewritten to conform to *Reddick*. Illinois Pattern Jury Instructions (Criminal IPI) (2d ed.) (1989 Supp.) at 85–99. Moreover, effective July 1, 1987, the offense of voluntary manslaughter was reclassified as second degree murder and the burden of proof as to the existence of the mitigating factors was expressly placed upon the defendant. P.A. 84–1450, § 2, Ill.Rev.Stat. ch. 38, ¶ 9–2 (1987). Therefore the district court's holding in this case has limited applicability, particularly in light of the State's presumably unusual reversal of positions discussed below.

right to challenge this substantial defect under Illinois law by failing to make a contemporaneous objection.

■ The State also contends that the petitioner failed to present her federal constitutional claim to the Illinois Supreme Court, which is a prerequisite to making such a claim on collateral appeal under 28 U.S.C. § 2254 and such precedent as *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379. To the contrary, the petitioner presented a federal constitutional claim to the Illinois Supreme Court in the following terms. She asserted that *Reddick* established that the trial court in her case erred in its murder and voluntary manslaughter instructions, "thus depriving the defendant of due process." Although the *Reddick* Court itself did not use the magic words "due process" as the petitioner did, the Court obviously considered the errors resulting from the invalid instructions to be of constitutional magnitude. The Court stated that "certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial." *Reddick*, 123 Ill.2d at 198, 122 Ill.Dec. 1, 526 N.E.2d 141. In this connection, the Court referred to *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344, a case involving the due process guarantees of the Fourteenth Amendment. *Reddick*, 123 Ill.2d at 195, 122 Ill.Dec. 1, 526 N.E.2d 141.[5] Moreover, this precise issue had been discussed pre-*Reddick* by the lower state courts in constitutional terms. See, *e.g.*, *People v. Chevalier*, 167 Ill.App.3d 790, 801, 118 Ill.Dec. 563, 521 N.E.2d 1256 (2d Dist.1988) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508, and *Patterson v. New York*, 432 U.S. 197,

210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281), reversed on other grounds, 131 Ill.2d 66, 136 Ill.Dec. 167, 544 N.E.2d 942 (1989). Therefore this case is distinguishable from *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (*per curiam*), in which the Court found that a petitioner had failed to exhaust his available state-court remedies because he argued on appeal only that an instruction was "erroneous" in light of a state supreme court decision that appeared to have no constitutional dimension.

Finally, we note that if a defendant presents the state courts with a state claim that is functionally identical to a federal claim, then we must regard the federal claim as fairly presented. *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438. The due process clause of the Illinois Constitution is available to ensure a fair trial. See, *e.g.*, *People v. Bender*, 20 Ill.2d 45, 54, 169 N.E.2d 328 (1960). Thus even if the petitioner's request to the Illinois Supreme Court is read as a due process claim under the state Constitution it would satisfy the presentment requirement. The fact that the Illinois Supreme Court decided not to discuss this constitutional claim in considering Mrs. Falconer's petition for leave to appeal does not preclude her assertion that she alerted the Court that it had the opportunity to examine her constitutional claim. *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (*per curiam*) (federal courts may infer that state court silence implies rejection of claim).

In *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380, the Supreme Court recently held that a petitioner who

---

5. *People v. Brooks*, 175 Ill.App.3d 136, 142, 124 Ill.Dec. 751, 529 N.E.2d 732 (1st Dist.1988), appeal denied, 124 Ill.2d 557, 129 Ill.Dec. 151, 535 N.E.2d 916, correctly interpreted *Reddick* as a decision "incontestably of constitutional dimension." To the same effect, see *People v. Thomas*, 185 Ill.App.3d 1050, 1054, 134 Ill.Dec. 100, 542 N.E.2d 100 (1st Dist.1989), leave to appeal allowed, 129 Ill.2d 571, 140 Ill.Dec. 679, 550 N.E.2d 564 (Ill.1990), and *People v. Shields*, 181 Ill.App.3d 260, 265, 129 Ill.Dec. 949, 536 N.E.2d 999 (1st Dist.1989), leave to appeal allowed, 129 Ill.2d 571, 140 Ill.Dec. 679, 550 N.E.2d 564 (Ill. 1990). *People v. Flowers*, 192 Ill.App.3d 292,

296–97, 139 Ill.Dec. 381, 548 N.E.2d 766 (1st Dist.1989), in its discussion of *Reddick*, also discusses due process. A different district of the Appellate Court of Illinois concluded that *Reddick* was not of constitutional magnitude. *People v. Bolden*, 181 Ill.App.3d 481, 487–88, 130 Ill.Dec. 97, 536 N.E.2d 1308 (4th Dist.1989); see also *United States* ex rel. *Bessie I. Fleming v. Gramley*, 735 F.Supp. 302 (C.D.Ill.1990) (following *Bolden* and disagreeing with district court opinion in *Falconer*). We disagree with the reasoning of *Bolden* and follow *Brooks* and its progeny.

raised for the first and only time his federal constitutional claims to a state's highest court under a discretionary procedure had not fairly presented the issues for review. As the district court found, this case is distinguishable because of the State's position in the post-conviction relief proceedings that the issue was in fact *res judicata*. *Falconer*, 720 F.Supp. at 639.

■ That fact plays an even larger role in yet another exhaustion argument offered by the State, which is that the petitioner's failure to appeal dismissal of her post-conviction petition by the state trial court on *res judicata* grounds is a procedural default precluding habeas corpus review. The State's position ignores the history of this case and the fact that waiver is not an obstacle reserved for habeas petitioners alone. The State persuaded the district court to dismiss the petitioner's first petition for habeas corpus on the ground that she had failed to exhaust an available state court remedy even though the Illinois Supreme Court had denied her petition for leave to appeal. This prompted the petitioner to seek post-conviction relief in the Circuit Court of Kane County, "pursuant to the [Illinois] Supreme Court's decision in *Reddick*, based upon *the deprivation of her constitutional rights to due process and a fair trial* as a result of the manslaughter and murder instructions which the jury received at her trial." Post–Conviction Pet. at ¶ 13 (emphasis added). The position of the State in the Circuit Court of Kane County that the Illinois Supreme Court's denial of the petitioner's petition for leave to appeal resolved this claim on the merits admitted that, so far as the State was concerned, the Illinois Supreme Court had reached and rejected her constitutional claim. Therefore, she was excused from pursuing a state appeal. As the district court observed with regard to the petitioner's predicament in the state post-conviction proceedings: "Once the State took the position that Ms. Falconer had adopted in this court, no rule of law or equity compelled Ms. Falconer to take issue with it." *Falconer*, 720 F.Supp. at 640. Illinois should not be permitted to put the petitioner in a Catch–22 position. Illinois has waived the argument that Mrs. Falconer has not yet exhausted her state remedies. See *Russell v. Rolfs*, 893 F.2d 1033, 1037–38 (9th Cir.1990) (criticizing inconsistent advocacy by state authorities that works to "whipsaw the petitioner back and forth between two court systems"), but see *id.*, 893 F.2d at 1039–44 (Kozinski, J., dissenting); *Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir.1988), certiorari denied *sub nom. Henderson v. Greer*, —— U.S. ——, 109 S.Ct. 1648, 104 L.Ed.2d 163. In any event, exhaustion is excused in circumstances like these. See *Castille*, 109 S.Ct. 1056, 1059; *Brown v. Allen*, 344 U.S. 443, 448–449 n. 3, 73 S.Ct. 397, 402–03 n. 3, 97 L.Ed. 469 (petitioner need not pursue redress through state collateral proceedings once issue fairly presented to state courts on direct appeal); *Gray v. Greer*, 707 F.2d 965, 968 (7th Cir.1983).

*B. Merits*

■ The federal courts may not overturn convictions resulting from state prosecutions merely because instructions given to juries are "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368. Instead, courts must determine whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. We are to judge the challenged charge in the context of the instructions as a whole, not "in artificial isolation." *Id.*

■ As noted above, it appears that the voluntary manslaughter instructions by themselves, together with other instructions, were not so misleading that the jury was logically precluded from returning a voluntary manslaughter verdict. The fact that the murder and voluntary manslaughter instructions were not defective when read in isolation does not, however, end the inquiry. See *Clark v. Jago*, 676 F.2d 1099, 1105 (6th Cir.1982) (instruction that might arguably have resolved ambiguity regarding "purpose to kill" element of aggravated murder in Ohio would not "cure" confusion), certiorari denied *sub nom. Marshall*

*v. Clark*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832.

The State misinterprets the petitioner's argument when it cites United States Supreme Court precedent for the proposition that, as a matter of constitutional law, the burden of proof as to an affirmative defense may be placed on either the defendant or the state. This case does not turn upon the presumption and burden of proof questions as were presented in such cases as *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (states must prove every element of a criminal offense beyond a reasonable doubt), *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (states need not "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused"), or *Martin v. Ohio*, 480 U.S. 228, 233, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (states may shift burden of proving self-defense to accused in homicide case). The hardship for the petitioner in this case is that even though the judge properly decided that the jury should consider a verdict of voluntary manslaughter, the jury may have been left with the false impression that it could convict the petitioner of murder even if she possessed one of the mitigating states of mind described in the voluntary manslaughter instruction. No matter which side carried the burden of proof on any particular element or defense, there can be no question that a murder verdict would have been improper if the jury had found one of the mitigating mental states. The murder instruction, in other words, read as though voluntary manslaughter did not exist as a crime. No matter how clearly either the State or the defense proved the existence of the mitigating "manslaughter defenses," the jury could nevertheless return a murder verdict in line with the murder instruction as given. Far from setting aside an interpretation of state law by state courts, the district court's decision in this case effectuated the holding of *Reddick* through the vehicle of the Due Process Clause. Cf. *United States* ex rel. *Reed v. Lane*, 759 F.2d 618, 622 (7th Cir. 1985) (state trial court's refusal to give compulsion instruction deprived defendant of due process), certiorari denied 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577.

Considering the instructions as a whole, we note that the murder instruction precedes the two voluntary manslaughter instructions. This has significance because just as a supplemental instruction may take on special prominence in the jury's mind, *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350, so the murder instruction stands at the top of the jury instruction check-list. Jurors are therefore encouraged by the structure of the instructions to answer its requirements first and then move on only if those requirements cannot be met.

■ The State suggests that the error was harmless. As proof, the State points to the finding of the Illinois appellate court on direct appeal that there was sufficient evidence to support the jury's murder verdict instead of a voluntary manslaughter verdict and that "the jury was justified in rejecting defendant's theory of self-defense as it could rationally have concluded that defendant was not justified in using deadly force * * *." *People v. Falconer*, 168 Ill. App.3d 618, 622–23, 119 Ill.Dec. 241, 522 N.E.2d 903. In refusing to overturn the jury's verdict, however, the state appellate court did not find that the record demonstrated that the jury could not have reasonably found that the killing was the result of provocation or unreasonable belief of justification. To the contrary, after reviewing the transcript of the trial, the trial court determined that the jury should have the opportunity to return a verdict of voluntary manslaughter. The central point is that the jury might have decided to convict the petitioner of murder because the State proved that she intentionally killed another without a reasonable belief that she acted in self-defense—despite clear proof that the petitioner was provoked to murderous passion by the victim or that the petitioner held an unreasonable belief that she was justified in killing the victim.

If read to a jury composed of lawyers, this set of instructions probably could not produce the faulty hypothetical murder

verdict complained of since the elements of voluntary manslaughter were stated. But the reasoning that could produce such a faulty verdict by a lay jury was unmistakably left open in instructions given by the presiding judge at trial. We must presume that the jury was not already schooled in distinctions between murder, voluntary manslaughter, and justifiable self-defense—or even the general concept of lesser-included offenses. As the Eighth Circuit stated in finding constitutionally faulty jury instructions: "Such error is not corrected merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed. The error cannot be treated as harmless." *United States v. Voss,* 787 F.2d 393, 398 (1986), certiorari denied, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261.

This is not a case in which the instructions may be described as falling just short of some ideal formulation, or as flawed only if viewed in "artificial isolation." They specifically directed the jury that it could return a verdict of murder if the State negated the self-defense theory without making any reference to evidence regarding provocation or unreasonable belief of justification. Explicit misdirection on this scale violates the constitutional guarantee of due process and demands a new trial or resentencing.

The State has not made an objection under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, to the retrospective application of *Reddick*'s holding by the district court and therefore there is no need to address that issue. *Hanrahan v. Greer,* 896 F.2d 241, 245 (7th Cir.1990).

### III.

The judgment granting the writ of habeas corpus unless the State has petitioner resentenced for voluntary manslaughter or retries her within 120 days herefrom is affirmed.[6]

---

**6.** See note 3, *supra.* On June 8, 1990, the district court issued an order for release of the petitioner on her own recognizance pursuant to Rule 23(c) of the Federal Rules of Appellate Procedure and *Hilton v. Braunskill,* 481 U.S. 770, 774, 107 S.Ct. 2113, 2117–18, 95 L.Ed.2d 724. On emergency motion from the State, this Court stayed the district court's order. That stay is continued in effect while the State determines whether to retry petitioner or have her resentenced for voluntary manslaughter.