UNITED STATES ex rel. Kevin
TAYLOR, Petitioner,

v.

Jerry D. GILMORE, Respondent.

No. 90–1211.

United States District Court,
C.D. Illinois.

Dec. 19, 1990.

Robert Agostinelli, Deputy Defender, Ottawa, Ill., for petitioner.

Douglas K. Smith, Asst. Atty. Gen., Springfield, Ill., for respondent.

## ORDER

MIHM, District Judge.

Before the Court is Petitioner Kevin Taylor's Petition for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254. Taylor asserts that the jury instructions issued by the trial court violated his constitutional right to due process. For the reasons stated below, the Petition for Habeas Corpus relief is DENIED.

## BACKGROUND

Following a jury trial in the Circuit Court of Sangamon County, Taylor was convicted of murder and home invasion and sentenced to concurrent terms of 35 years and six years respectively. The facts supporting these convictions are not critical to the issues discussed herein, so they are set forth here only briefly as general background information.

On September 14, 1986, at approximately 1:00 a.m., Taylor called the home of his ex-wife Joyce Taylor to ask about their daughter Katy and about Joyce's boyfriend, Scott Siniscalchi. Joyce spoke briefly with Taylor and then hung up. A few minutes later, Taylor called back and this time Joyce's boyfriend Scott answered the phone. During a brief conversation, Scott raised his voice and told Taylor to leave Joyce alone because she needed her sleep.

A short time later, Taylor broke into Joyce's home and walked into the bedroom where Joyce and Scott had been sleeping. Taylor climbed onto the bed and, as Joyce and Scott moved away, he pulled out a knife and jumped on top of Scott. The two men struggled and Taylor stabbed Scott with the knife and killed him.

The state charged Taylor with murder and the lesser included offense of voluntary manslaughter, as well as home invasion. Taylor's position at trial was that he acted under a sudden and intense passion at the time of the killing and thus that he could only be convicted of voluntary manslaughter.

At the close of the evidence, the jury was given pattern instructions on murder fol-

lowed by the following pattern instructions on voluntary manslaughter:

To sustain the charge of voluntary manslaughter, the evidence must prove the following propositions:

First: That the Defendant performed the acts which caused the death of Scot Siniscalchi, and

Second: That when the Defendant did so he intended to kill or do great bodily harm to Scot Siniscalchi; or he knew that such acts would cause death or great bodily harm to Scot Siniscalchi; or he knew that such acts created a strong probability of death or great bodily harm to Scot Siniscalchi;

Third: That when the Defendant did so he acted under a sudden and intense passion, resulting from serious provocation by another.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the Defendant not guilty.

As stated previously, the Defendant is charged with committing the offense of murder and voluntary manslaughter. If you find the Defendant guilty, you must find him guilty of either offense; but not both. On the other hand, if you find the Defendant not guilty, you can find him not guilty on either or both offenses.

After being given these instructions, the jury returned a verdict finding Taylor guilty of murder.

On direct appeal, the Illinois Appellate Court affirmed Taylor's conviction. The Illinois Supreme Court later denied Taylor's petition for leave to appeal this decision. Taylor was equally unsuccessful in his petition for post-conviction relief at all levels of the Illinois courts.

About a year after Taylor had exhausted his direct appeals, the Illinois Supreme Court handed down its decision in *People v. Reddick*, 123 Ill.2d 184, 526 N.E.2d 141, 122 Ill.Dec. 1 (1988), which held that jury instructions such as those used in Taylor's trial constitute "grave error." The court in *Reddick* found that with these instructions a jury could find a defendant guilty of murder even though it found the presence of mitigating factors in the evidence which would support a finding of voluntary manslaughter. After *Reddick* was decided, Taylor filed this petition for habeas relief, arguing that the jury instructions used violated his constitutional right to due process.

## DISCUSSION

The state concedes that, under the current state of the law, the jury instructions used in Taylor's trial amount to a due process violation. The state notes that the Seventh Circuit has adopted *Reddick*'s view that such jury instructions on murder and voluntary manslaughter, when read together as they were at Taylor's trial, erroneously permit a jury to convict a defendant of murder even where it finds the presence of one or more mitigating circumstances. *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990). *Falconer* held that the *Reddick* decision, although not explicitly stated in such terms, was clearly predicated upon constitutional considerations of due process.

Thus, the issue of the constitutionality of the jury instructions used in Taylor's trial is not an issue before this Court—the *Reddick/Falconer* analysis holds that they are constitutionally defective and the state does not dispute this. However, the state argues other reasons why Taylor is not entitled to habeas relief despite these decisions. First, the state argues that, pursuant to *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the *Reddick* decision should not be applied retroactively to Taylor's conviction. Secondly, the state argues that even if the *Reddick* decision is applied to Taylor's conviction, any error produced by the erroneous instructions was harmless.

*Teague* held that a newly forged constitutional principle which was not in effect at the time that a conviction became final may

not provide the basis for habeas relief. *Teague* created a "general rule" that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. at 1075. The state argues that *Reddick* announced a new constitutional rule not in effect when Taylor's conviction became final, and thus is not applicable to his conviction.

Taylor was convicted on March 20, 1986. Taylor proceeded on direct review of his conviction until May 9, 1987, when the Illinois Supreme Court denied leave to appeal. If Taylor's conviction did not become final on May 9, 1987 when the Illinois Supreme Court denied leave to appeal, then it certainly became final 90 days thereafter when Taylor's period for seeking a writ of certiorari expired. *See* United States Supreme Court Rule 13; *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989).

The Illinois Supreme Court's decision in *Reddick,* on the other hand, was not handed down until June 20, 1988—almost a year after Taylor's direct review had expired. Thus, the only way the *Teague* general rule will not apply (and that *Reddick* will be given retroactive application) is if *Reddick* did not announce a "new constitutional rule of criminal procedure."

In defining what constitutes a "new rule," the Supreme Court in *Teague* stated as follows:

> In general, however, a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal government. (Citations omitted). To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final. (Citation omitted) (emphasis in original).

The dispositive question then becomes whether *Reddick* announced such a new constitutional principle.

Taylor asserts that *Reddick* was based upon well-established principles of constitutional law and thus should be afforded retroactive application. Plaintiff cites *People v. Flowers,* 192 Ill.App.3d 292, 548 N.E.2d 766, 139 Ill.Dec. 381 (1st Dist.1989) in support of this argument. In that case, the Illinois Appellate Court stated as follows:

> Moreover, the rule enunciated in *Reddick* was clearly predicated upon well-settled principles of law. Consequently, although defendant's conviction was final prior to the issuance of the *Reddick* decision, we conclude that the rule of *Reddick* should be applied [retroactively] to defendant's pending collateral attack on his conviction.

548 N.E.2d at 769, 139 Ill.Dec. at 384. However, the Illinois Appellate Court cited no cases substantiating its position that *Reddick* was "clearly" based upon existing law.

The state argues that *Reddick* did announce a new principle of law and thus should not be afforded retroactive application. In support of its argument, the state cites *People v. Flowers,* 138 Ill.2d 218, 561 N.E.2d 674, 149 Ill.Dec. 304 (1990), the Illinois Supreme Court's review of the Illinois Appellate Court decision above. In *Flowers,* the Illinois Supreme Court reversed the Appellate Court and held that *Reddick* did indeed announce a new constitutional rule of criminal procedure.

> We conclude that *Reddick* did constitute a new rule. Though *Reddick* was doctrinally consistent with existing laws regarding affirmative defenses and burdens of proof, it was the first time this court applied these legal principles to the specific situation of the murder and voluntary manslaughter instructions. In applying these principles, not only did the court determine that the instructions were erroneous, it also ruled that, as written, they implicated constitutional rights. This conclusion did not necessarily flow from the statutory analysis. (Citations omitted). Also, this "result was not dictated by precedent existing at the time." (Citations omitted). Instead, the long-standing practice in the trial courts was to instruct the jury on murder and voluntary manslaughter consistent with the Illinois Pattern Jury Instructions.

448

This court also did not invalidate these instructions in other cases it reviewed prior to *Reddick.*

561 N.E.2d at 683, 149 Ill.Dec. at 313. This Court is inclined to agree with the rationale of the Illinois Supreme Court. *Reddick* outlawed jury instructions which had been firmly entrenched in the Illinois Pattern Instructions—they had not been declared erroneous prior to that decision. Similarly, when the Seventh Circuit declared that the erroneous instructions criticized in *Reddick* constituted a due process violation, it seemed to be announcing a new constitutional rule of criminal procedure. The Seventh Circuit in *Falconer* did not rest its decision upon other cases finding the same or similar jury instruction pattern to be unconstitutional.

Given that *Reddick* did announce a new rule, the only way it can be applied retroactively to Taylor's conviction is if it falls into one of the two recognized exceptions to the *Teague* general rule prohibiting retroactive application. The first exception is for new rules which place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to prescribe." 489 U.S. at 307, 109 S.Ct. at 1073. The second exception allowing retroactive application is for a new rule which requires the observance of procedures which are "implicit in the concept of ordered liberty." *Id.* (Citations omitted).

These exceptions do not apply here. First, the *Reddick* rule did not place certain kinds of individual conduct beyond the power of the state to prescribe. As the Illinois Supreme Court stated in *Flowers,* "the conduct proscribed in this case is murder, the prosecution of which is not prohibited by *Reddick.*" Secondly, the rule announced in *Reddick* cannot be said to be a procedure implicit in the concept of ordered liberty. The phrase "implicit in the concept of ordered liberty" was borrowed from Justice Cardozo's opinion in *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). In that opinion, Justice Cardozo carved a very narrow interpretation of that concept—one which encompassed only the most cherished and most sacred of our constitutional rights. Indeed, Cardozo's examples of principles which are not implicit in the concept of ordered liberty (including trial by jury, criminal charge by indict-

ment, and immunity from compulsory self-incrimination, 302 U.S. at 325, 58 S.Ct. at 151) firmly establish that this category is reserved for overwhelmingly fundamental constitutional doctrines. This Court cannot say that the rule announced in *Reddick* and approved of in *Falconer* satisfied this criteria.

Having found that the due process standard articulated in *Reddick* and *Falconer* cannot be applied retroactively to Taylor's conviction, it is unnecessary to address the state's alternative contention that the erroneous instructions constituted harmless error. Without retroactive application of the standards in *Reddick* and *Falconer,* the instructions issued by the trial court in Taylor's trial do not amount to error and therefore a harmless error analysis is inappropriate.

## CONCLUSION

Although the state concedes (and case law makes clear) that the jury instructions used in Taylor's trial constituted a violation of due process, such was not the law at the time Taylor's conviction became final. As such, those cases announcing the unconstitutionality of such jury instructions cannot provide the basis for habeas relief in this Court. Therefore, Taylor's Petition for Habeas Corpus Relief is hereby DENIED.