COFFIN, Circuit Judge.
In today’s companion case,[1] we decline to overturn our prior decisions finding that the old Illinois Pattern Jury Instructions for murder and manslaughter, when given together, may violate a defendant’s due process right to a fair trial. These instructions were also given in the instant case. We conclude, however, that this error was harmless and therefore reverse the judgment below granting the writ of habeas corpus.
I. Background
A. Facts
Toney was convicted of one count of murder and two counts of attempted murder for shooting three individuals at a Chicago restaurant called Harold’s Chicken Shack (Harold’s) on the evening of April 29, 1985. *995 James Love and Rodney Williams were injured; Lindsey Williams was killed.
The shootings were precipitated by an encounter between Rodney Williams and To-ney's co-defendant, David Kelly.[2] Rodney Williams testified that, between 1:00 and 2:00 p.m. on April 29, he was driving to a liquor store with two friends when he saw David Kelly walking down the street. Kelly was wearing a hat tilted to the left, which Williams took as a sign that he was gang affiliated. Kelly stared into, the car and Williams called out: “You [ought to] straighten your hat up where you can see.” Shortly thereafter, Williams and two friends were walking to Harold’s when they again encountered Kelly. Upon seeing them Kelly ran away, causing his hat to fall off.
Later that night, Williams met two other friends, James Love and Lindsey Williams, and the three entered Harold’s. Williams testified that David Kelly entered the restaurant, walked straight up to him and asked if Williams remembered him now without his hat on. Williams said he did not and told him to “get out of his face.” Kelly then left and, a short time later, petitioner Toney entered with a gun drawn. Williams testified that Toney pointed the gun at him and shot him. He fell against a wall and heard four more shots.
The other surviving victim, James Love, also testified for the prosecution. He stated that, on the night of the shooting, he, Rodney Williams and Lindsey Williams were sitting at the booth closest to the door at Harold’s. He and Rodney Williams went to the window to place an order. David Kelly then entered, asked Rodney Williams if he remembered him, and left. Love testified that he and Rodney Williams then went to the window to pick up their orders. As they were returning to their table, Toney entered with a gun drawn. Love testified that Toney pointed the gun at Rodney Williams and shot him. Toney then shot Lindsey Williams in the head while he sat in the booth, turned the gun toward Love, and shot him in the lower right back as he was diving for cover.
Both Love and Williams denied threatening Toney or possessing weapons at the time of the shooting.
Police Officer James Haggard testified that, when he arrived at Harold’s in response to a call of a shooting, he found one man dead and two others wounded. He identified a photograph of the scene of the shooting that showed a pocketknife lying on the floor.
The prosecution called several witnesses who testified that while in custody Toney made a voluntary statement confessing to the shootings. Assistant State’s Attorney Romza testified that she had reduced Toney’s verbal statement to writing. Toney reviewed the statement, made one minor addition, and signed it, telling Romza that it was voluntary and accurate. The statement indicated that Toney had been a member of the El Rukn gang for 16 years up to 1983 and that David Kelly was also a member of the El Rukns. On the night of the shooting, Kelly arrived at a house where Toney was present,' complaining that “3 chumps were trying to move on him with guns” and that they were “up at Harold’s ... making pistol plays.” According to the statement, Toney told Kelly that he would take care of the situation and left the building armed with a .32 snub-nosed revolver tucked into his pants. He entered Harold’s, finding the three men inside. Kelly then entered and started arguing with them, prompting Toney to tell Kelly to leave. As Kelly headed out the door, two of the three men started to get up. Toney then drew his gun and fired six shots. According to the statement, the first two he fired at David Kelly because he “knew David started the whole thing and I told [him] not to be there.” Toney then “sprayed the rest of the shots at the 3 dudes in the chicken shack,” one of whom “was still in his chair when I started shooting.” He did not see any of the three men holding guns.
Toney took the stand and testified that the statement was false; he had signed it as part of a deal with the interrogating officers that he would be charged with manslaughter and not murder. He said that police officers had told him that, because there was a knife found at the scene, they would charge him *996 with manslaughter only and relocate his family if he signed the statement and cooperated with ongoing investigations into other crimes involving the El Rukn gang. He stated that officers had beaten him while he was being questioned.
Toney also described a different version, of the shooting from that portrayed by Williams and Love and in his statement. He testified that, on the evening of April 29, David Kelly arrived at a building where Toney was present. Kelly told him that, when he went to order some chicken at Harold’s, three men had threatened him with. guns. The three had previously chased him and taken his hat from him. Toney accompanied Kelly back to the restaurant and both men walked inside. Toney heard Rodney Williams say to Kelly, “Yeah, Shorty, we got your cap.” Toney told Williams not to harass young people like Kelly and that, if he wanted a fight, Toney would fight him. Kelly picked up his chicken order and he and Toney walked toward the exit to leave.
According to Toney, Rodney Williams then jumped up from the table and approached him from the side. Toney spun around and said to him, “if you are looking for some trouble, you are going to get some trouble. We did not come for [any] trouble, but if you want some trouble, you can get all the trouble that you want.” Undeterred, Rodney Williams reached toward the door; Love also moved toward Toney. Love told Toney that he might as well sit down “and then [Love] reached for his pocket.” Then, according to Toney’s testimony, “Rodney Williams went to make a move and dropped something. I do not know what he dropped, and then that is when I started shooting.” Toney first shot Rodney Williams, then Love, and then, when Lindsey Williams “went to get up, trying to come up out of the booth,” Toney shot him. Toney testified that, in light of the fact that David Kelly had told him that the three had been armed, he “was not going to take [any] chances of getting shot in the back.... The whole thing I was thinking about is making sure they did not hurt me.” Toney testified that he did not see that any of the men had guns.
The autopsy revealed that Lindsey Williams died from a single gunshot wound to the right side of his head, just in front of his right ear, which travelled slightly downwards.
B. Jury Instructions
The jury instructions contained two independent errors. First, the jury was charged on the counts of murder and voluntary manslaughter according to the Illinois Pattern Jury Instructions, which are erroneous under Falconer v. Lane, 905 F.2d 1129 (7th Cir.1990) and its progeny. See Thomas v. Peters, 48 F.3d 1000 (7th Cir.1995). Second, the murder instructions themselves were incorrect. To convict for murder, three elements must be proved beyond a reasonable doubt: performing the acts that caused death; doing so with intent to kill or do great bodily harm; and the absence of justification. In Toney’s case, however, a printing error occurred in the murder instructions given to the jury. The instructions read:
To sustain the charge of murder the State must prove the following propositions:
First: That the defendant performed the acts which caused the death of Lindsey Williams; and
Second: That when the defendant did so, he intended to kill or do great bodily harm to Lindsey Williams; or he knew that his acts created a strong probability of death or great bodily harm ...; or
Third: That the defendant was not justified in using the force that he used.
If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.
We have highlighted the “or” connecting the second and third propositions; it was supposed to be an “and.” A separate instruction *997 given to the jury correctly defined the offense of murder.[3]
The jury was instructed that a person is justified in using force that is intended or likely to cause death or great bodily harm only if he reasonably believes it necessary to prevent imminent death or great bodily harm to himself or another.
As will be made clear, it is also relevant to note that the jury was correctly instructed on the crime of attempted murder. To convict for that crime, the jury was told that the State must prove the following propositions:
First: That the defendant performed an act which constituted a substantial step toward the commission of the offense of murder; and
Second: That the defendant did so with intent to commit the offense of murder.
Third: That the defendant was not justified in using the force which he used.
If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.
While no conjunction connected the second and third propositions here, the instruction that follows makes it clear that “each of these propositions” must be proved to convict.[4]
C. Procedural History
The jury found Toney guilty of murder in the death of Lindsey Williams and guilty of attempted murder in the shootings of Rodney Williams and James Love.[5] He appealed and the Appellate Court of Illinois affirmed the convictions. People v. Toney, 195 Ill.App.3d 1108, 164 Ill.Dec. 118, 582 N.E.2d 326 (1st Dist., 1990). Toney sought leave to appeal to the Illinois Supreme Court, which was denied. People v. Toney, 133 Ill.2d 569, 149 Ill.Dec. 334, 561 N.E.2d 704 (1990). He then sought a writ of habeas corpus in United States District Court. Following this court’s opinion in Falconer, which held that murder and manslaughter instructions almost identical to those used in Toney’s trial may violate a defendant’s due process rights, and finding that the error could not be considered harmless, the district court granted the writ. United States ex rel. Toney v. Peters, No. 91 C-3378, slip op., 1992 WL 300984 (N.D.Ill. Oct. 14, 1992). The State now challenges this judgment and Toney cross appeals.
II. Discussion
Today’s companion case resolves the State’s central argument on appeal, that the Supreme Court’s decision in Gilmore v. Taylor, — U.S. -, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993), impliedly overrules our decision in Falconer. We thus are" faced with whether the Falconer error and the misprinted murder instructions are harmless, and with the issues raised by Toney’s cross appeal.[6]
*998 A. Harmless Error
1. Falconer Error
As indicated in today’s companion case, the Falconer error is susceptible to harmless error analysis pursuant to Brecht v. Abrahamson, — U.S.-,-, 113 S.Ct. 1710, 1772,123 L.Ed.2d 353 (1993). The test is “whether, in light of the record as a whole,” the error “ ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ ” Id. (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); Carter v. DeTella, 36 F.3d 1385, 1392 (7th Cir.1994). Furthermore, this Circuit has held that applying the Brecht test “requires the habeas court to evaluate to some extent the probability of the outcome if the case were tried under proper instructions,” an inquiry that may indeed touch upon questions of witness credibility. Cuevas v. Washington, 36 F.3d 612, 620-21 (7th Cir.1994); Rosa v. Peters, 36 F.3d 625, 632 (7th Cir.1994); Carter, 36 F.3d at 1392.[7] As guided by these principles, our review of Toney’s trial transcript satisfies us that the error was harmless in his case.
Preliminarily, we question whether the version of the shooting Toney gave at trial even contained the elements necessary to reduce murder to manslaughter. To be guilty of manslaughter only, Toney had to have an honestly held belief, albeit an unreasonable one, that shooting Lindsey Williams was necessary to prevent his own imminent death or great bodily harm. Toney testified that, when he shot his victims, his thoughts were that he “was not going to take [any] chances of getting shot in the back.... The whole thing I was thinking about is making sure they did not hurt me.” We find questionable whether such a prophylactic desire rises to the level of a belief that it is necessary to shoot a' firearm to prevent one’s own imminent death or great bodily harm,, particularly when it was Toney who placed himself in danger by entering the premises armed with a gun. Toney also testified that he shot the fatal bullet at Lindsey Williams last— after both Rodney Williams and James Love had been shot — as Lindsey Williams “went to get up, trying to come up out of the booth.” Toney did not indicate that, after Rodney Williams and Love were shot and no longer posed a danger to him, he felt threatened by Lindsey Williams in any way. While there was, apparently, a pocket knife later found on the scene, Toney testified that he did not see any of his victims ever possessing or displaying it when he shot them. In short, it is far from clear that sufficient evidence was even presented to the jury that would have mitigated Toney’s crime from murder to manslaughter.
Moreover, whatever evidence of manslaughter Toney presented by his trial testimony, it was flatly contradicted by both Lindsey Williams and James Love. Williams testified that Toney entered the restaurant with his gun drawn, aimed at him, and shot him. Williams then heard four more shots. Love testified that Toney entered with his gun drawn; that he shot Rodney Williams; that he then shot the fatal bullet at Lindsey Williams while the latter was still seated at the booth; and that Toney then fired at Love while he jumped for cover. Further, Toney’s confession to the police made no mention of any threatening behavior by the three men.[8] Additionally, the autopsy revealed that the bullet entered Lindsey Williams on the right side of his head and travelled in a slightly downward trajectory. This is more consistent with the version given by Love and in Toney’s statement — that Toney shot Lindsey Williams while he was still seated at the booth — than the version Toney described at *999 trial — that he shot him as he was getting up out of the booth. In sum, if there was any evidence of manslaughter, it was so slight that, when we contrast it with the powerful evidence of murder, we conclude that the Falconer error did not have a substantial effect upon the jury’s verdict.
Indeed, prior decisions of this Circuit have found harmless error despite evidence supporting manslaughter of at least comparable weight to that presented here. See Cuevas, 36 F.3d at 620-21 (defendant testified that man she killed had physically abused her in the past and had recently assaulted her and explicitly threatened her life); Rosa, 36 F.3d at 627-28, 631-32 (defendant gave statement that he and a friend were approached by a group of men from hostile gang; he fired weapon that killed victim only after he heard someone shout, “Get them,” and heard gunshots); Carter, 36 F.3d at 1391-93 (defendant testified that victim had swung a baseball bat at him, trying to kill him; defendant then wrestled the bat away and hit victim with it). Finally, we note that the Appellate Court of Illinois found that this error was harmless beyond a reasonable doubt. People v. Toney, 195 Ill.App.3d 1108, 164 Ill.Dec. 118, 582 N.E.2d 326 (1st Dist.1990). Faced with Brecht’s less stringent standard, and this Circuit’s decisions applying harmless error in this area, we conclude that the Falconer error does not require issuance of the writ in this case.
2. The Printing Error
We next examine whether the typographical error in the murder instructions, whereby the second and third elements were incorrectly linked by an “or” instead of an “and,” was harmless. Toney posits that this error had the effect of directing the jury to convict for murder upon finding only that the first two propositions were proved — that he shot Williams causing his death, and that did so with intent to kill or do great bodily harm — without requiring the jury to find the necessary lack of justification. As his brief put it:
Toney’s defense at trial was self-defense: that he shot in the belief that the three men were about to shoot him. Since there was no issue as to the first and second propositions, the misprinted instruction required the jury to find Toney guilty of murder.
(Petitioner’s Brief at 22.)
As noted above, the jury received correct instructions on attempted murder, which included absence of justification as a proposition that had to be proved beyond a reasonable doubt. By convicting Toney of the attempted murders of Rodney Williams and James Love, the jury rejected Toney’s claim of justification as to those shootings. Toney testified that he shot Rodney Williams and James Love because, as they approachéd him, one reached into his pocket and the other dropped something to the ground; To-ney shot Lindsey Williams thereafter, as he was attempting to get out of the booth. In light of this testimony, we believe that no rational jury could have found the defendant guilty of attempted murder in the shootings of Rodney Williams and James Love, which required a finding of lack of justification as to those shootings, without' also making a finding that Toney was not justified in shooting Lindsey Williams. See United States v. Parmelee, 42 F.3d 387 (7th Cir.1994) (applying this same analysis, articulated in Sullivan v. Louisiana, — U.S. -, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) and discussed in Thomas v. Peters, n. 9, 48 F.3d 1000, 1006 n. 9 (7th Cir.1995), to jury instructions that were missing an element of the crime of conviction). We, therefore, conclude that this instructional error had no effect on the murder verdict.
B. Toney’s Cross Appeal
Finally, on cross appeal Toney submits that his statement to the police should have been suppressed because it was. involuntary and taken in violation of his Miranda rights. After carefully reviewing the entire transcript in light of Toney’s arguments, we find this claim to be unpersuasive for substantially the same reasons as given by the district court in its well reasoned opinion.

Conclusion

Because we find the errors in Toney’s case were harmless and his claims on cross appeal *1000 are without merit, the judgment below granting the writ of habeas corpus is REVERSED.

. Thomas v. Peters, 48 F.3d 1000 (7th Cir.1995).

. Kelly was acquitted after a simultaneous bench trial.

. This "definitional” instruction for murder states that: "A person commits the offense of murder when he kills an individual without lawful justification if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts create the strong probability of death or great bodily harm to that individual."

. The instruction that "each of these propositions” must be proved following the faulty murder charge does not have the same clarifying effect. On its face, that instruction is inconsistent with the instruction that the first and either the second or third proposition must be proved to convict. A juror attempting to read them consistently might take "each of these propositions" to mean each of the propositions required by the other instruction, i.e., the first and either the second or third propositions.

. During deliberations, the jury sent the court a note that read: “Could we slide a sheet out as we feel there may be a printing error.” The judge, when he received this note, stated that the juiy had returned the instructions for voluntary manslaughter, which, unlike the murder instruction, contained no printing error. After the judge and counsel reviewed the instruction and found no error, it was returned to the jury with a note by the judge that read: "The instruction is correct.” Thereafter, the jury reached its verdicts.

. As the State apparently concedes, the retroactive application of Falconer is not an issue because Falconer was decided during the pendency *998 of Toney’s direct appeal. (Respondent's Reply Brief at 1.) While dropping this argument, the State raises a new issue for the first time in a footnote in its reply brief: fair presentment. We hold that the State has waived this issue by failing to assert it in its initial brief and by failing to fully develop the point.

. See Thomas v. Peters, at n. 9, 48 F.3d 1000, 1006 n. 13 (7th Cir.1995), where we note why we do not follow the somewhat different harmless error analysis articulated in Sullivan v. Louisiana, - U.S. -, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

. While we recognize that Toney attempted to impeach this statement, it was properly before the jury for its consideration. See infra at 999.