UNITED STATES of America,
ex rel. Bessie I. FLEMING,
Petitioner–Appellant,

v.

Jane HUCH, Warden, Dwight Correctional Center, Respondent–Appellee.

No. 90–1981.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1991.

Decided Feb. 5, 1991.

Gary R. Peterson, Office of the State Appellate Defender, Springfield, Ill., for petitioner-appellant.

Douglas K. Smith, Asst. Atty. Gen., Springfield, Ill., Scott Walden, Adams County State's Atty., Quincy, Ill., for respondent-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Bessie Fleming appeals the district court's denial of her petition for habeas corpus relief. She claims, as did the petitioners in *United States ex rel. Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), and *United States ex rel. Rose v. Lane,* 910 F.2d 400 (7th Cir.1990), that the murder and voluntary manslaughter instructions used at her trial denied her due process of law. As in *Falconer* and *Rose,* the writ of habeas corpus must be granted in this case, and, therefore, we reverse the district court.

I

On March 6, 1986, Bessie Fleming shot and killed her husband. The State charged her with murder under Ill.Rev.Stat.1985, ch. 38, para. 9–1(a). At trial, Fleming presented evidence that she was a victim of the battered wife syndrome. Her husband, an alcoholic with three previous failed marriages, abused her verbally, psychologically and physically many times during their five-year relationship. Most of the incidents of abuse occurred after Fleming's husband had been drinking, and they were almost always followed by periods of apologetic remorse. The abuse temporarily subsided after a failed suicide attempt by Ms. Fleming and Mr. Fleming's agreement to undergo clinical treatment for alcohol addiction. The abuse resumed, however,

when Mr. Fleming began drinking again. At trial, the doctor who testified in Ms. Fleming's defense case found this to be a classic case of battered wife syndrome, and the State, though it presented its own expert witness as to the nature of this malady, did not challenge that diagnosis.

The facts surrounding the shooting are basically as follows. No longer able to take the abuse, and assured by Mr. Fleming's sister in Florida that she could move down and live with her, Ms. Fleming told her husband that she was going to leave him. He responded, "The only way you will leave me is feet first." The following morning, when Ms. Fleming again told her husband that she was going to leave, he assured her that he meant his threat. The two then went to the trucking company they operated. Mr. Fleming went out to move a trailer, and then, from the loading dock, began shouting at Ms. Fleming. Ms. Fleming got Mr. Fleming's loaded gun out of his desk drawer, put on a rubber glove so she wouldn't get any gunpowder on herself, grabbed a rug, and went out to the dock. As her husband was climbing down off the rig and coming toward her, Ms. Fleming lifted the rug in front of the gun to muffle the sound, and fired at Mr. Fleming. The first shot missed, but the second shot hit Mr. Fleming in the head and killed him.

It was Fleming's theory at trial that the killing was justified as self-defense. It was the State's theory that Fleming killed her husband in a deliberate and premeditated manner for financial reasons. (The State introduced evidence concerning irregularities in the books kept by the Flemings' trucking company, as well as several delinquent debts owed by the Flemings that ended up being paid out of Mr. Fleming's life insurance proceeds.) Under the Illinois criminal statutes applicable at the time, murder was defined as the killing of an individual with either intent to kill or do great bodily harm, or knowledge that the acts would cause, or create a strong probability of, death or great bodily harm. Ill. Rev.Stat.1985, ch. 38, para. 9–1(a). Voluntary manslaughter was defined as the killing of an individual while acting under either sudden, intense passion due to serious provocation, or an unreasonable belief that force was justified to prevent imminent death or great bodily harm to oneself. Ill.Rev.Stat.1985, ch. 38, para. 9–2. Thus, under these statutes, if Fleming shot her husband because she was provoked to murderous passion by him, or because of an honest but unreasonable belief that firing the shots was necessary to prevent imminent death or great bodily harm to herself, she would be guilty not of murder but of voluntary manslaughter.[1] (Note that if Fleming honestly and *reasonably* believed that she had to shoot her husband to protect herself from imminent danger of death or great bodily harm, then she would be guilty of no crime at all. *See* Ill.Rev.Stat. 1985, ch. 38, para. 7–1; *People v. Aguero*, 87 Ill.App.3d 358, 42 Ill.Dec. 383, 408 N.E.2d 1092 (1st Dist.1980).)

Because of the evidence as to the abuse suffered by Fleming, the trial court decided to instruct the jury as to both murder and voluntary manslaughter. The court used the then-applicable Illinois pattern jury instructions on murder, I.P.I. Criminal No. 7.02 (2d ed. 1981), voluntary manslaughter—provocation, I.P.I. Criminal No. 7.04 (2d ed. 1981), and voluntary manslaughter—unreasonable belief of justification, I.P.I. Criminal No. 7.06 (2d ed. 1981). The murder instruction gave the jury the elements the State had to prove beyond a reasonable doubt to sustain that charge, but made no mention of the "manslaughter defenses" of provocation and unreasonable belief of justification. The voluntary manslaughter instructions told the jury that, to sustain such a charge, the State had to prove beyond a reasonable doubt either that Fleming "acted under a sudden and intense passion resulting from serious provocation" or

---

1. Effective July 1, 1987, this portion of the Illinois Criminal Code has been changed. Intentional or knowing killing under ¶ 9–1 is now "first degree murder," and what was voluntary manslaughter under ¶ 9–2 is now "second degree murder." *See* Haddad, *Second Degree Murder Replaces Voluntary Manslaughter in Illinois: Problems Solved, Problems Created*, 19 Loy.U. Chi.L.J. 995 (1988).

that she held an unreasonable belief that "circumstances existed which would have justified killing the decedent."

The jury rejected Fleming's self-defense argument and the "manslaughter defenses" and found her guilty of murder. She was sentenced to 20 years imprisonment. Fleming appealed, raising, among other challenges, the argument that the jury should have been instructed that the burden of proof was on the State to negate the partial affirmative defense of voluntary manslaughter. The appellate court rejected this argument and affirmed, *People v. Fleming*, 155 Ill.App.3d 29, 107 Ill.Dec. 801, 507 N.E.2d 954 (4th Dist.1987), and the Illinois Supreme Court denied leave to appeal. *People v. Fleming*, 116 Ill.2d 566, 113 Ill.Dec. 307, 515 N.E.2d 116 (1987).

The Illinois Supreme Court then decided the case of *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). In *Reddick*, the Illinois Court reversed the appellants' convictions on the ground that the Illinois pattern jury instructions on murder and manslaughter used there— Nos. 7.02, 7.04 & 7.06, the same instructions used here—"essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter." 122 Ill.Dec. 1, 526 N.E.2d at 145. Interpreting Ill.Rev.Stat.1985, ch. 38, para. 3–2, which provided that the State retains the burden of proof beyond a reasonable doubt as to affirmative defense issues raised by a defendant (except insanity), the Court held that, if a defendant charged with murder presents sufficient evidence to raise issues that would reduce the charge to voluntary manslaughter, the State has the burden to prove beyond a reasonable doubt that these "manslaughter defenses" are meritless. *Id.* 122 Ill.Dec. at 5–6, 526 N.E.2d at 145–46. The Court then held that the use of instructions that misallocated these burdens of proof was a sufficiently "grave error" that waiver would not be found, despite the fact that the defendants there failed to object to the manslaughter instructions, offered no instructions of their own, and did not raise this issue in their post-trial motions. *Id.* 122 Ill.Dec. at 7–8, 526 N.E.2d at 147–49.

Citing *Reddick*, Fleming filed a post-conviction petition in Illinois state court seeking collateral relief from her conviction. *See* Ill.Rev.Stat.1985, ch. 38, paras. 122–1 *et seq.* She alleged that the jury instructions violated her rights under the due process clause. The state circuit court denied the petition and, by unpublished order, the appellate court affirmed. *See People v. Fleming*, 183 Ill.App.3d 1115, 145 Ill.Dec. 409, 556 N.E.2d 1311 (4th Dist.1989) (Table). The appellate court, relying on *People v. Bolden*, 181 Ill.App.3d 481, 130 Ill. Dec. 97, 536 N.E.2d 1308 (4th Dist.1989), held that the "grave errors" in the Illinois manslaughter instructions discussed in *Reddick* and undoubtedly present in this case were not "of constitutional magnitude." The Illinois Supreme Court again denied leave to appeal. *People v. Fleming*, 127 Ill.2d 625, 136 Ill.Dec. 595, 545 N.E.2d 119 (1989).

Her state remedies exhausted, Fleming brought this habeas corpus proceeding in the district court pursuant to 28 U.S.C. § 2254. Agreeing with the Illinois appellate court that the error in the manslaughter instructions, "while violative of state law, did not violate Petitioner's due process rights," the district court denied the writ. *United States ex rel. Fleming v. Gramley*, 735 F.Supp. 302, 306 (C.D.Ill.1990). The district court explicitly rejected the analysis and result in *United States ex rel. Falconer v. Lane*, 720 F.Supp. 631 (N.D.Ill. 1989). *See Fleming*, 735 F.Supp. at 306–307. The district court also distinguished *United States ex rel. Reed v. Lane*, 759 F.2d 618 (7th Cir.1985), a case upon which the district court in *Falconer* substantially relied, on the following grounds: "At her moment of decision, Petitioner must have realized that her husband was only a future danger and thus she was not permitted to use deadly force. Petitioner's actions were not self-defense, nor were they voluntary manslaughter, they were murder. Therefore, the analysis and decision of *Reed* are inapplicable to the case at bar." *Fleming*, 735 F.Supp. at 308. Finally, as an alternative ground, the district court held that any constitutional error oc-

casioned by the jury instructions was harmless beyond a reasonable doubt. *Id.* at 308–09.

From this decision, Fleming brought a timely appeal.

## II

That the jury instructions used in Fleming's trial violated due process is clear. We said as much in *United States ex rel. Falconer v. Lane,* 905 F.2d 1129 (7th Cir. 1990), wherein we affirmed the very district court decision rejected by the district court in the instant case. In *Falconer,* as in the instant case, the petitioner was a woman who had suffered physical abuse at the hands of her husband for many years. At her murder trial, the petitioner in *Falconer* attempted to prove that she killed her husband in self-defense. The trial court gave the same Illinois pattern jury instructions on murder and voluntary manslaughter given in *Reddick* and the instant case. Because we agreed with the district court that these instructions not only violated Illinois law as discussed in *Reddick,* but also violated the petitioner's due process rights, we affirmed the grant of the writ. *Falconer,* 905 F.2d at 1135–36. The due process violation was found in the fact that, considering the murder and voluntary manslaughter instructions as a whole and when read together, "the jury may have been left with the false impression that it could convict the petitioner of murder even if she possessed one of the mitigating states of mind described in the voluntary manslaughter instruction.... The murder instruction, in other words, read as though voluntary manslaughter did not exist as a crime." *Id.* at 1136. We relied on the due process jurisprudence discussed in *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), and *United States ex rel. Reed v. Lane,* 759 F.2d 618, 622 (1985); to wit, the faulty instructions "so infected the entire trial that the resulting conviction violates due process."

*Cupp,* 414 U.S. at 146, 94 S.Ct. at 400. Any doubt that remained after *Falconer* as to the constitutional nature of the errors in these instructions has been resolved by *United States ex rel. Rose v. Lane,* 910 F.2d 400 (7th Cir.1990). There again we held that the use of the Illinois pattern jury instructions invalidated by *Reddick* denied the petitioner due process.[2]

■ At oral argument, the State basically (and wisely) conceded that, after *Falconer* and *Rose,* it cannot be disputed that the errors in these jury instructions constitute a violation of due process. The State suggested, however, that an ambiguity exists as to the precise nature of the due process violation. The State noted that, in *Falconer,* we expressly disavowed reliance on "presumption and burden of proof questions" in defining the due process violation occasioned by these instructions. 905 F.2d at 1136. In that vein, we distinguished *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which concern the permissibility of assigning to defendants the burden of proof as to elements of affirmative defenses. The State noted further that, in apparent contrast, we stated in a footnote in *Rose* that "*Reddick* creates a federal claim through *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." 910 F.2d at 401 n. 1. *Winship,* of course, concerns the due process-based requirement that the government sustain the burden of proof beyond a reasonable doubt "of every fact necessary to constitute the crime with which [the defendant] is charged." 397 U.S. at 364, 90 S.Ct. at 1072.

A brief review of the context of the statement in *Rose,* however, dispels any "ambiguity." In footnote one of *Rose,* our purpose was to determine whether the *Falconer*/due process issue properly was before our court; the petitioner had pursued

---

2. In both *Falconer* and *Rose,* we went on to address various procedural default arguments raised by the State. *See Rose,* 910 F.2d at 402–03; *Falconer,* 905 F.2d at 1133–35. In both cases, all such arguments were rejected. We are saved the task of examining these issues in relation to the instant case because the State has not raised any of them, and thus they are waived. *See Rose,* 910 F.2d at 401–02 n. 1.

a due process claim in the state system and in the district court that differed from the claim discussed in *Falconer*. (An understandable situation, as both *Reddick* and *Falconer* came down after the petitioner argued his claim to the state courts and to the district court.) In the sentence in which we differentiated the petitioner's earlier due process argument (right to lesser included offense instruction) from the *Falconer/Reddick* claim, we used the above-quoted phrase linking *Reddick* and *Winship*. The rest of our opinion makes clear, however, that we did not intend in *Rose* to alter the analysis of *Falconer* as to the nature of the due process violation found in these instructions. In fact, we expressly found *Falconer* and its reasoning to be dispositive with little or no further discussion. *See Rose*, 910 F.2d at 402. Thus, the short phrase in footnote one of *Rose* characterizing the due process violation occasioned by these instructions as having its source in *Winship* (rather than, as *Falconer* teaches, in *Cupp* and *Reed*), was, at most, our use of somewhat unartful shorthand.

■ A closer question than whether the jury instructions violated due process is whether that constitutional violation was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967) (federal constitutional error must be harmless beyond a reasonable doubt). In contrast to the district court, we conclude that it was not. The evidence concerning the battered wife syndrome was substantial and uncontroverted, which fact motivated the trial court to give the voluntary manslaughter instructions in the first place. The instructions given, however, worked an affirmative injustice; they allowed—even invited—the jury to return a verdict of guilty on the murder charge even if it made findings that should have resulted in a verdict of voluntary manslaughter. As we said in *Falconer*, "Explicit misdirection on this scale violates the constitutional guarantee of due process and demands a new trial...." 905 F.2d at 1137. Indeed, in both *Falconer* and *Rose*, we rejected attempts by the State to characterize this error as harmless, finding instead that this error was "inherently prejudicial." *Rose*, 910 F.2d at 403 (citing *Falconer*, 905 F.2d at 1137). In the face of all this, the State submits that, even if the jury had been constitutionally instructed, it would have returned a verdict of guilty of murder (assuming it did not partake of jury nullification). As our opinions in *Falconer* and *Rose* make clear, the nature of the constitutional error occasioned by these instructions belies that conjecture. *See also United States v. Voss*, 787 F.2d 393, 398 (8th Cir.) (faulty instructions that mislead the jury as to the elements of the charged crimes are not corrected, and the error cannot be treated as harmless, "merely because an appellate court, upon review, is satisfied that the jury would have found the essential facts had it been properly instructed") (citations omitted), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986), *cited with approval in Falconer*, 905 F.2d at 1137.

## III

For the foregoing reasons, the denial of the writ of habeas corpus is REVERSED. Unless the State of Illinois retries Fleming within 120 days herefrom, the respondent shall discharge her.