**UNITED STATES of America ex rel. David GLADNEY, Petitioner,**

v.

**Howard PETERS, Director, Department of Corrections, Respondent.**

**No. 91 C 5037.**

United States District Court, N.D. Illinois, E.D.

March 5, 1992.

Jeffrey M. Howard, Cook County Public Defenders Office, Chicago, Ill., for petitioner.

Terence Madsen, Illinois Atty. General's Office, Chicago, Ill., for respondent.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Presently before this court is David Gladney's petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Gladney's sole assertion is that he was denied due process of law because the instructions given to the jury at trial allowed the jury to return a verdict of murder despite findings that should have resulted in a verdict of voluntary manslaughter. For the reasons stated below, the petition for writ of habeas corpus is granted.

## I. BACKGROUND

Following a jury trial in the Circuit Court of Cook County, Gladney was convicted of murder, Ill.Rev.Stat. ch. 38, ¶ 9–1(a), armed violence, Ill.Rev.Stat. ch. 38, ¶ 33A–2, and aggravated battery, Ill.Rev.Stat. ch. 38, ¶ 12–4(a). The following facts supporting these convictions are taken from the opinion of the appellate court on direct review, and are presumed accurate. 28 U.S.C. § 2254(d) (1988).

[O]n the evening of December 7, 1983, Marvin Gladney (defendant's brother), two 17–year–old girls, Tracy Jackson and Generia Major, two other young men, Angel Velez and John Green, and the defendant drove together to a liquor store. Tracy gave Angel money for liquor and cigarettes, but he was unable to make the purchase and gave the money to the defendant. Defendant returned to the car without the liquor but said he no longer had the 85 cents contributed by Tracy. An argument ensued over the money. Marvin drove the group about 4 blocks, parked, ordered the three men (defendant, Angel and John) out of the station wagon, and proceeded to search them. He recovered the 85 cents from his brother, the defendant. Everyone except the defendant returned to the car, with Marvin again in the driver's seat.

Defendant then opened the driver's door. His brother got out, pushed defendant to the ground, and returned to the car which was only about two steps

away. Defendant fired six shots into the car, shattering all three windows on the driver's side of the car. Tracy was shot twice in the wrist and hospitalized for 3 weeks. Generia was killed instantly from a shot to the head.

Defendant was first interrogated by Detective Richter of the Chicago Police Department shortly after midnight on December 8, 1983. At that time he claimed to have been in the car at the time the shooting occurred. After talking to the other witnesses, Detective Richter returned to defendant and gave him his *Miranda* rights. Defendant subsequently confessed to the shooting, contending that he only intended to frighten his brother.

The trial court merged Gladney's aggravated battery conviction with the murder conviction, and sentenced him to concurrent terms of twenty-five years for murder and twenty years for armed violence.

On direct appeal, Gladney argued that (1) he was denied his constitutional right to a jury drawn from a fair cross-section of the community; (2) the prosecutor committed prejudicial error during the closing rebuttal argument; (3) the trial judge improperly refused to instruct the jury on involuntary manslaughter; and (4) the voir dire examination was inadequate under the guidelines of *People v. Zehr*, 103 Ill.2d 472, 83 Ill.Dec. 128, 469 N.E.2d 1062 (1984). The appellate court rejected Gladney's arguments and affirmed. *People v. Gladney*, 157 Ill.App.3d 1159, 119 Ill.Dec. 976, 523 N.E.2d 732 (1st Dist.1987). The Illinois Supreme Court subsequently denied Gladney's petition for leave to appeal the appellate court's decision. *People v. Gladney*, 117 Ill.2d 548, 115 Ill.Dec. 405, 517 N.E.2d 1091 (1987).

Gladney's current claim, *i.e.*, the impropriety of the jury instructions, was raised initially in his petition for post-conviction relief. On October 30, 1990, however, the Circuit Court of Cook County dismissed Gladney's petition without an evidentiary hearing. That very day, Gladney filed a notice of appeal to the Appellate Court of Illinois First District, Fourth Division. However, upon Gladney's own motion, the

appeal was voluntarily dismissed. Thus, Gladney appears before this court seeking a writ of habeas corpus on the ground that the jury instructions given at trial violated his right to due process of law.

## II. JURY INSTRUCTIONS

At the time of Gladney's conviction, murder was defined as the killing of an individual with either the intent to kill or do great bodily harm, or knowledge that the acts would cause, or create a strong probability of, death or great bodily harm. Ill.Rev. Stat. ch. 38, ¶ 9–1 (1983). The crime of voluntary manslaughter included the elements of murder as set forth in ¶ 9–1, coupled with a mitigating mental state—that the defendant acted either under a sudden and intense passion arising from serious provocation, or under an unreasonable, but honest, belief that deadly force was justified to prevent his imminent death or great bodily harm. *Id.* ¶ 9–2.[1] Finding that Gladney was entitled to instructions on both murder and voluntary manslaughter, the court furnished the jury with Illinois Pattern Jury Instructions, Criminal Nos. 7.02 (murder) and 7.04 (voluntary manslaughter—provocation), which provide as follows:

> To sustain the charge of murder, the State must prove the following propositions:
>
> First, that the defendant performed the acts which caused the death of Generia Major; and, second, that when the defendant did so, he intended to kill or do great bodily harm to Generia Major; or he knew that his acts created a strong probability of death or great bodily harm to Generia Major.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a

reasonable doubt, you should find the defendant not guilty.

> To sustain the charge of voluntary manslaughter, the State must prove the following propositions:
>
> First, that the defendant performed the acts which caused the death of Generia Major; and, second, that when the defendant did so, he intended to kill or do great bodily harm to Marvin Gladney, or knew that such acts would cause death or great bodily harm to Marvin Gladney, or he knew that such acts created a strong probability of death or great bodily harm to Marvin Gladney; and, third, that when the defendant did so, he acted under a sudden and intense passion resulting from serious provocation by another, or he acted under a sudden and intense passion resulting from serious provocation by some other person he endeavored to kill but he negligently or accidentally killed Generia Major.
>
> If you find from your consideration of all the evidence that each one of those propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

Record at 560, 562.

## III. DISCUSSION

■ There can be no question that the jury instructions used in Gladney's trial were faulty. In *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), the Illinois Supreme Court declared defective jury instructions nearly identical to those tendered at Gladney's trial. Relying upon Ill.Rev.Stat. ch. 38, ¶ 3–2 (1985), the court held "if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge of

---

1. As noted in *United States ex rel. Fleming v. Huch,* 924 F.2d 679, 680 n. 1 (7th Cir.1991), pursuant to amendments to the Illinois Criminal Code, effective July 1, 1987, the crime of

"murder" under ¶ 9–1 is now labelled "first degree murder," and what was "voluntary manslaughter" is presently "second degree murder."

murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless." *Reddick,* 123 Ill.2d at 197, 122 Ill.Dec. at 5, 526 N.E.2d at 145. Concluding that the jury instructions used in Reddick's trial—Illinois Pattern Jury Instructions Nos. 7.02, 7.04 & 7.06—"essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter," the court invalidated the instructions under the Illinois Criminal Code of 1961. *Id.*

■ Two years later, in an effort to "effectuate[ ] the holding of *Reddick,*" the Seventh Circuit held that the jury instructions at issue likewise run afoul of the due process clause of the United States Constitution. *Falconer v. Lane,* 905 F.2d 1129, 1136 (7th Cir.1990). Citing the due process jurisprudence discussed in *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), and *United States ex rel. Reed v. Lane,* 759 F.2d 618 (7th Cir. 1985), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986), the court in *Falconer* found the jury instructions confusing when read together as a whole:

> The hardship for the petitioner in this case is that even though the judge properly decided that the jury should consider a verdict of voluntary manslaughter, the jury may have been left with the false impression that it could convict the petitioner of murder even if she possessed one of the mitigating states of mind described in the voluntary manslaughter instruction. No matter which side carried the burden of proof on any particular element or defense, there can be no question that a murder verdict would have been improper if the jury had found one of the mitigating mental states. The murder instruction, in other words, read as though voluntary manslaughter did not exist as a crime.

*Falconer,* 905 F.2d at 1136. Accordingly, it is clear that this claim, initially addressed by the Illinois Supreme Court in *Reddick* under state law, is now cognizable in federal habeas corpus proceedings. *See Taylor v. Gilmore,* 954 F.2d 441, 448–449 (7th Cir. 1992); *United States ex rel. Fleming v. Huch,* 924 F.2d 679, 682 (7th Cir.1991); *Rose v. Lane,* 910 F.2d 400, 402 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 515, 112 L.Ed.2d 526 (1990).

The State, however, argues that although the jury instructions used in Gladney's trial were constitutionally inadequate, Gladney nonetheless is not entitled to a writ of habeas corpus. Specifically, the State contends that (1) Gladney has procedurally defaulted his *Falconer* claim, (2) the *Falconer* decision should not be applied retroactively to Gladney's conviction, and (3) the erroneous jury instructions were harmless beyond a reasonable doubt. We address each argument in turn.

### A. Procedural Default [2]

■ Waiver of claims via the procedural default doctrine may occur at several

---

**2.** We note that 28 U.S.C. § 2254(b) requires a federal habeas petitioner to exhaust state remedies before a federal court will consider his claims. The exhaustion requirement is satisfied when the petitioner either (1) "fairly presents" the claim to the highest state court for a ruling on the merits, or (2) is left with no available state-court remedies at the time the federal petition is filed. *Farrell v. Lane,* 939 F.2d 409, 410 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, the State noted in its answer that "Petitioner has apparently exhausted his state court remedies." Answer ¶ 5, at 3. Indeed, it appears that at the time he filed his federal petition, Gladney could no longer seek redress in the state courts.

"The law in this Circuit is that an issue cannot be considered unexhausted based on the availability of Illinois post-conviction proceedings unless there is 'direct precedent'—meaning clear and similar precedent—that under the particular circumstances of the case Illinois' waiver doctrine will not prevent post-conviction relief." *United States ex rel. Verdin v. O'Leary,* No. 89–895, slip op. at 3, 1990 WL 133415 (N.D.Ill. Sept. 12, 1990) (1990 U.S.Dist.LEXIS 12097) (citing *Gray v. Greer,* 707 F.2d 965, 968 (7th Cir.1983)). As discussed in greater detail *infra* this subsection, it is unclear whether the Illinois Supreme Court will relax its waiver rule in the case of a petitioner who does not pursue post-conviction relief in the Illinois Appellate Court. Although Gladney, in an attempt to avoid the waiver problem, could file a motion for reinstatement in the Illinois Appellate Court, reinstatement is a measure within the court's discretion. As such, this avenue does not provide "a meaning-

different stages throughout the totality of the state proceedings. First, in states that maintain a contemporaneous objection rule—such as Illinois—failure to object at trial to the disputed jury instructions will ordinarily prevent federal habeas review. *See United States v. Warner*, 855 F.2d 372, 374 (7th Cir.1988). Likewise, a petitioner generally forfeits the right to raise an issue he failed to raise on direct appeal. *Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990). Finally, a claim is normally deemed waived for purposes of federal habeas review if the petitioner either neglects to raise the claim in a post-conviction petition or fails to appeal the denial of his post-conviction petition. *Farrell*, 939 F.2d at 411; *Morrison v. Duckworth*, 898 F.2d 1298, 1300 (7th Cir.1990).

There is no dispute that Gladney did not object to the jury instructions at trial, nor did he raise the issue on direct appeal. However, as a threshold inquiry, if the Illinois courts would not preclude petitioner's claim under the above mentioned state-procedural rules, it may be reviewed in a federal habeas proceeding. *Falconer*, 905 F.2d at 1133 (citing *Wainwright v. Sykes*, 433 U.S. 72, 85–86, 97 S.Ct. 2497, 2505–06, 53 L.Ed.2d 594 (1977)). Anticipating the dilemma posed by the procedural default doctrine, the *Reddick* court explicitly stated: "The instant cases involve grave error.... A reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address, and [under Illinois Supreme Court Rule 451(c), the "interest of justice" excep-

tion] we shall not ignore these grave errors in these causes." *Reddick*, 123 Ill.2d at 198, 122 Ill.Dec. at 7, 526 N.E.2d at 147. As such, the *Reddick* court reviewed defendants' claims despite the fact that they did not object to the jury instructions at trial or raise the issue in a post-trial motion. *Id.* Further, in *People v. Flowers*, 138 Ill.2d 218, 561 N.E.2d 674, 677 (1990), the Illinois Supreme Court examined the present question in the context of a post-conviction proceeding notwithstanding the fact that the claim was not raised on direct appeal. In light of the Illinois Supreme Court's application of Rule 451(c) in *Reddick* and *Flowers*, Gladney's current claim is not barred by his failure to make a contemporaneous objection nor by his failure to raise the issue on direct appeal. *See Falconer*, 905 F.2d at 1133–34.

After the court's decision in *Reddick*, Gladney filed a post-conviction petition in state court asserting the impropriety of the jury instructions.[3] Upon denial of that petition, Gladney promptly filed a notice of appeal. However, he failed to pursue the appeal, moving for, and receiving, a voluntary dismissal. As such, the State contends that Gladney's claim should not be reviewed in a federal habeas proceeding. To be sure, neither *Reddick* nor any other case before the Illinois Supreme Court addressing the jury instructions issue involved a circumstance in which a defendant pursued post-conviction relief after failing to appeal the denial of his state post-conviction petition. Consequently, we cannot conclude with any degree of certainty that the Illinois Courts would address the merits of Gladney's claim despite his failure to pursue his appeal.[4]

ful remedy," *Perry v. Fairman*, 702 F.2d 119, 120 (7th Cir.1983), because there is no clear indication that the appellate court will grant such a motion for reinstatement. At root, Gladney has exhausted his claim by procedurally defaulting it in state court. *See United States ex rel. Falconer v. Lane*, 720 F.Supp. 631, 636 (N.D.Ill. 1989) ("The third way that a petitioner may exhaust his state court remedies is by procedurally defaulting on his claim in state court.").

**3.** While important distinctions exist between the holdings of *Reddick* and *Falconer* (*i.e.,* the former rests on state law while the latter considers

the constitutional ramifications of the jury instructions in question), for purposes of procedural default analysis, citing to *Reddick* is sufficient to constitute a challenge to the jury instructions based on federal constitutional principles. *See Falconer*, 905 F.2d at 1134.

**4.** We note, however, that Gladney appears to be similarly situated to the petitioner in *Falconer* in that both declined to "press [their] action[s] for post-conviction relief in the Illinois courts." *Falconer*, 905 F.2d at 1132. Despite Falconer's failure to appeal the denial of her state post-

However, the default arising from Gladney's failure to pursue his appeal nevertheless must be excused under the "cause and prejudice" standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Gladney withdrew his appeal in the face of *People v. Flowers*, 138 Ill.2d 218, 149 Ill.Dec. 304, 561 N.E.2d 674 (1990), which held that *Reddick* would not be applied retroactively to cases on postconviction review. When an appeal to a state court would be futile due to adverse precedent, federal courts will review the claim despite the default. *See, e.g., Lampkins v. Gagnon*, 710 F.2d 374, 375 (7th Cir.1983), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). Accordingly, this court is compelled to review Gladney's current claim despite the voluntary dismissal in the appellate court.

### B. Retroactivity of *Falconer*

■ At the time that Gladney filed the instant petition, the issue of whether *Falconer* applied retroactively was unresolved, evoking polarized opinions in the district courts. *Compare United States ex rel. Taylor v. Gilmore*, 770 F.Supp. 445, 448 (C.D.Ill.1991) *Falconer* announces a new rule, thereby prohibiting retroactive application) *with United States ex rel. Flowers v. Illinois Dep't of Corrections*, 767 F.Supp. 880, 894 (N.D.Ill.1991) (*Falconer* did not announce a new rule and thus applies retroactively). This question, however, has since been resolved. The Seventh Circuit in *Taylor v. Gilmore*, 954 F.2d 441, 453 (7th Cir.1992), a case challenging jury instructions identical to those presently at issue, held that "*Falconer* is not a new rule, and hence ... [the petitioner] is entitled to its retroactive application."

In *Taylor*, the Seventh Circuit began its analysis with the criteria for determining whether criminal decisions should be applied retroactively. In general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). The question of whether a case announces a "new rule" under *Teague* involves an inquiry that can be described, at best, as insidiously labyrinthine. The Court in *Teague* defined a new rule as one that "breaks new ground or imposes a new obligation on the States or the Federal Government ... [or] was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. at 1070 (emphasis in original). In subsequent cases, the Supreme Court has endeavored to refine its definition. *See Butler v. McKellar*, 494 U.S. 407, 414, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990) (A decision announces a new rule if it is contrary to prior "reasonable, good-faith interpretations of existing precedents" made by lower federal courts or state courts, or if its outcome was "susceptible to debate among reasonable minds."); *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 2828–31, 111 L.Ed.2d 193 (1990) (same). Unfortunately, these alternate formulations of the *Teague* definition do not always point in the same direction. *See United States ex rel. Free v. Peters*, 778 F.Supp. 431, 441–42 (N.D.Ill.1991). In an attempt to clarify the analysis "in distinguishing 'old' from 'new' rules in murky cases," the Seventh Circuit in *Taylor* adopted the following inquiry:

---

conviction petition, the court held that she did not forfeit her right to challenge Illinois Pattern Jury Instructions 7.02 & 7.04. *Id.* at 1133–34. The court, however, did not explicitly state that the language in *Reddick,* imploring Rule 451(c), was sufficient to overcome Falconer's failure to appeal the denial of her state post-conviction petition. Instead, that the *Falconer* court excused petitioner's failure to raise the jury instructions issue on appeal is likely a result of the unique procedural backdrop of that case. After filing a federal habeas petition, Falconer was sent to pursue state post-conviction relief

based on the State's representation that her claim was not *res judicata* in the state courts. *United States ex rel. Falconer v. Lane*, 708 F.Supp. 202, 205 (N.D.Ill.1989). During the state post-conviction proceeding, however, the State argued that the Illinois Supreme Court's denial of leave to appeal precluded any post-conviction relief. The state trial court agreed and dismissed the petition. *Falconer,* 720 F.Supp. at 632. Given the atypical procedural foundation of *Falconer,* we are inclined to apply the "cause and prejudice" standard before excusing Gladney's default.

First, we determine whether the case clearly falls in one category or another—if it overrules or significantly departs from precedent, or decides a question previously reserved, it is a new rule, while if it applies a prior decision almost directly on point to a closely analogous set of facts, it is not. Second, when the question is a close one, we will look to (1) whether the case at issue departs from previous rulings by lower courts or state courts, and (2) the level of generality of prior precedent in light of the factual context in which that precedent arose. *Taylor*, at 446.

Notwithstanding *United States ex rel. Peery v. Sielaff*, 615 F.2d 402 (7th Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980), and *United States ex rel. Bacon v. De Robertis*, 728 F.2d 874 (7th Cir.), *cert. denied*, 469 U.S. 840, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984), the *Taylor* court concluded that *"Falconer* is not the type of case that departed from precedent and hence obviously announced a new rule," and thus proceeded to apply the two-pronged analysis set forth above for "difficult" new rule cases. *Id.*, at 450. Respecting the first inquiry—whether lower courts or state courts had previously disagreed with the ruling in *Falconer*—the court found no indication of a pre-*Falconer* difference of opinion. *Id.*, at 450. Thus, the court advanced to consider the generality of the case law underlying *Falconer*. Although noting that none of the cases cited in *Falconer*, including *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), dictated the result of the case, the court nevertheless concluded that *Falconer* was dictated by specific precedent. While not cited by the court in *Falconer*, the *Taylor* court considered the principle laid out in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), "indistinguishable from that applied in *Falconer*." *Taylor*, at 453. Accordingly, the court applied *Falconer* retroactively to grant Taylor's petition for writ of habeas corpus.

In light of the recent holding in *Taylor*, this court will apply the principle laid out in *Falconer* to the present case despite the fact that Gladney's conviction became final prior to the Seventh Circuit's decision.

### C. Harmless Error

As a final barrier to habeas relief, the State contends that the erroneous jury instructions at Gladney's trial were harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). As an initial matter, it is far from settled that the harmless error doctrine applies to this particular constitutional violation. Indeed, the Seventh Circuit has repeatedly stated "the constitutional errors in the Illinois murder/manslaughter pattern instructions [are] 'inherently prejudicial.'" *Taylor*, at 454; *Fleming*, 924 F.2d at 683; *Rose*, 910 F.2d at 403; *Falconer*, 905 F.2d at 1137. However, while this strong language suggests that this court need not entertain the State's harmless error argument, each of the above cited cases includes some discussion pertaining to the prejudice each individual petitioner faced.

In any event, there can be no doubt that the erroneous jury instructions at Gladney's trial were not harmless beyond a reasonable doubt. The trial judge, by granting Gladney's request to tender the voluntary manslaughter instruction, apparently believed that there was enough evidence to support such a verdict. Indeed, our review of the record reveals that, at a minimum, Gladney has advanced a colorable claim of sudden passion arising from a serious provocation. He had been searched, pushed, and ridiculed by his brother—apparently not for the first time. Contrary to the State's assertion, this type of repeated humiliation certainly could have resulted in sudden and intense passion. For this court to find otherwise would in effect amount to a repudiation of cultural and historical reality.

### IV. CONCLUSION

For the reasons set forth above, we grant Gladney's petition for a writ of habeas corpus. The writ shall issue unless the

State of Illinois elects to retry him within 120 days. It is so ordered.