**UNITED STATES of America ex rel.
Erwin DANIEL, Petitioner,**

v.

**Howard A. PETERS, III, Director
Department of Corrections, State
of Illinois, Respondent.**

No. 91 C 6108.

United States District Court,
N.D. Illinois, E.D.

April 7, 1992.

Erwin Daniel, pro se.

Evelyn Grace Baniewicz, Karen E. Tietz, Cook County Public Defender's Office, Chicago, Ill., for petitioner.

Steven Joseph Zick, Roland W. Burris, Illinois Atty. General's Office, Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Erwin Daniel has petitioned the court for habeas corpus relief pursuant to 28 U.S.C. § 2254. Daniel's sole basis for relief is that the jury instructions given at trial on murder and voluntary manslaughter violated his due process rights under the Fifth and Fourteenth Amendments.

## FACTS

Following a jury trial in the Circuit Court of Cook County, Daniel was convicted of murder and aggravated battery and sentenced to 35 years in prison. The underlying facts are taken from the opinion of the Illinois appellate court on direct review, and are presumed accurate. 28 U.S.C. § 2254(d).

Defendant was arrested for the shooting of Anthony Prater and the fatal shooting of Dimitric Grant. A jury trial was commenced on January 15, 1986, and the State's witnesses testified to the following occurrence of events.

On June 14, 1985 the deceased drove with the other victim to Calumet High School. The deceased went into the school building for approximately 90 minutes while the other victim waited in the car. When the deceased returned, they drove toward 81st and May Streets, where they saw a large crowd of people surrounding a street fight. The deceased pulled the car up to the curb and asked "What happened to Shorty?" Someone in the crowd responded that he "kicked his butt." Defendant then appeared and approached the deceased victim's side of the car. After backing off, defendant reached into a bag, pulled out a gun, and fired the shots which fatally wounded deceased and injured the other victim.

Corey Davis, who was with defendant at the time of the incident, also testified for the State. He stated that prior to the shooting, the deceased drove his car up within five feet of defendant and asked "What are you pussy rocks doing here." Corey Davis stated that this comment was a "gang intimidation insult" which would be spoken to a rival gang member.

Although there was conflicting testimony as to what statements the deceased made to defendant prior to the shooting, the witnesses on both sides testified that no weapon was found on either victim or at the scene of the shooting.

Following the incident defendant fled, but he met Corey Davis later that day and gave him the weapon which had been used in the shooting. Corey Davis testified that

defendant told him that he shot the victims because the deceased victim called him a "pussy."

Several hours after the incident defendant surrendered to the police. The weapon used in the shooting was recovered from Corey Davis, and defendant gave oral and written statements to Assistant State's Attorney James Morici. In response to questioning, defendant stated that he had seen the deceased three weeks prior to the incident, and that the deceased was with someone who shot defendant's friend. Defendant also stated that when he first saw the deceased on the day of the incident in question, the deceased had his left hand "hanging" out of the car. The deceased asked defendant, "Don't I know you from somewhere?" Defendant responded affirmatively, moved closer to the car and fired two shots in the deceased's direction. Defendant acknowledged that he did not see either victim with a weapon, but said that he saw the deceased move toward the other victim.

Dr. Robert Stein, the medical examiner, testified that the deceased was struck by two bullets in the chest; one perforated his heart and lung. Dr. Stein also stated that the path of the bullets was from the left to the right side of the body.

Defendant testified that he shot the victims in self-defense. He stated that he saw the deceased move toward the other victim and remembered the incident three weeks earlier when he saw the deceased give a gun to someone else, who then shot and wounded defendant's companion.

On direct appeal, Daniel contended that (1) he was not proven guilty beyond a reasonable doubt of murder and aggravated battery and (2) he was deprived of a fair trial due to prosecutorial misconduct. The Illinois appellate court rejected these arguments and affirmed the convictions. Daniel did not file a petition for leave to appeal to the Illinois Supreme Court.

Daniel's claim of erroneous jury instructions was raised in his petition for post-conviction relief. The Circuit Court of Cook County dismissed Daniel's petition. Daniel did not appeal that dismissal. The

issue presented to this court by Daniel's habeas petition is whether the murder and voluntary manslaughter jury instructions given at trial violated Daniel's due process rights.

## DISCUSSION

■ At trial in the Circuit Court of Cook County, the court furnished the jury with Illinois Pattern Jury Instructions, Criminal Nos. 7.02 (murder) and 7.06 (voluntary manslaughter—unreasonable belief of justification). The jury instructions were given as follows:

To sustain the charge of murder, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Dimitric Grant; and

Second: That when the defendant did so, he intended to kill or do great bodily harm to Dimitric Grant; or

he knew that his acts would cause death or great bodily harm to Dimitric Grant; or

he knew that his acts created a strong probability of death or great bodily harm to Dimitric Grant.

If you find from your consideration of all of the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all of the evidence that any one of these provisions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

\*　　\*　　\*　　\*　　\*　　\*

To sustain the charge of voluntary manslaughter, the State must prove the following propositions:

First: That the defendant performed the acts which caused the death of Dimitric Grant; and

Second: That when the defendant did so, he intended to kill or do great bodily harm to Dimitric Grant; or

he knew that his acts would cause death or great bodily harm to Dimitric Grant; or

he knew that his acts created a strong probability of death or great bodily harm to Dimitric Grant; and

Third: That when the defendant did so he believed that circumstances existed which would have justified killing Dimitric Grant; and

Fourth: That the defendant's belief that such circumstances existed was unreasonable.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

(R. 409, 411)

The State does not dispute that these jury instructions were improper. In *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), the Illinois Supreme Court declared defective Illinois Pattern Jury Instructions Nos. 7.02, 7.04 (voluntary manslaughter—provocation) and 7.06. The Court held that

the instructions set forth above, when read together, erroneously state the burdens of proof on the issues of whether the defendants acted under either intense passions or unreasonable beliefs that their actions were justified. The voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the People must prove the existence of one of the alternative mitigating mental conditions which the People contend did not exist. By contrast, the murder instruction makes no mention of the mitigating mental conditions. These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it

will have been proved by the defendant, not the People.

*Reddick,* 122 Ill.Dec. at 5, 526 N.E.2d at 145. After examining the Illinois Criminal Code of 1961, the Court found that "the burden-of-proof instructions regarding both voluntary manslaughter and murder ... were thus incorrect in placing upon the People the burden of *proving* the existence of intense passion or unreasonable belief in justification. The instructions should have placed upon the People the burden of *disproving* the existence of either of these two states of mind." *Id.,* 122 Ill.Dec. at 6, 526 N.E.2d at 146 (emphasis added).

In 1990, the Seventh Circuit held that the jury instructions at issue violated the Due Process Clause of the United States Constitution. *Falconer v. Lane,* 905 F.2d 1129, 1135–36 (7th Cir.1990). The court in *Falconer* found the jury instructions susceptible to interpretation problems when read together as a whole:

The hardship for the petitioner in this case is that even though the judge properly decided that the jury should consider a verdict of voluntary manslaughter, the jury may have been left with the false impression that it could convict the petitioner of murder even if she possessed one of the mitigating states of mind described in the voluntary manslaughter instruction. No matter which side carried the burden of proof on any particular element of defense, there can be no question that a murder verdict would have been improper if the jury had found one of the mitigating mental states. The murder instruction, in other words, read as though voluntary manslaughter did not exist as a crime. No matter how clearly either the State or the defense proved the existence of the mitigating "manslaughter defenses," the jury could nevertheless return a murder verdict in line with the murder instructions as given.

*Id.* at 1136. Thus, the claim of erroneous jury instructions asserted by petitioner properly states a constitutional violation cognizable in federal habeas proceedings. *Id.; Fleming v. Huch,* 924 F.2d 679, 682 (7th Cir.1991); *Rose v. Lane,* 910 F.2d 400,

402 (7th Cir.1990); *Gladney v. Peters*, 790 F.Supp. 1364, 1368 (N.D.Ill.1992).

▄▄▄ The State argues that Daniel procedurally defaulted by failing to appeal the denial of his post-conviction petition.[1] As stated above, that petition addressed the claim of constitutionally-violative murder/manslaughter jury instructions. When a prisoner like Daniel fails to give the state courts a full and fair opportunity to review his claims, a procedural default occurs. *See Morrison v. Duckworth*, 898 F.2d 1298, 1300 (7th Cir.1990). Daniel can only bring his claim in a federal habeas petition if he can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *See Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir.1992). The United States Supreme Court has defined "cause" as "some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim." *Id.* at 385.

▄▄▄ Daniel claims that "[a]ny further state appeal from the denial of his post-conviction petition was rendered futile by the Illinois Supreme Court's decision in *People v. Flowers*, 138 Ill.2d 218, [149 Ill. Dec. 304], 561 N.E.2d 674 (1990)." (Petition, ¶ 12.) The futility of pursuing appellate review due to adverse precedent may establish "cause" because it is an "external objective factor" which makes unavailable the legal basis for a claim. *See Barksdale*, 957 F.2d at 385; *Lampkins v. Gagnon*, 710 F.2d 374, 375 (7th Cir.1983) (procedural default argument rendered meritless given futility of pursuing claims in state court), *cert. denied*, 464 U.S. 1050, 104 S.Ct. 729,

79 L.Ed.2d 189 (1984); *Gladney*, 790 F.Supp. at 1369.

▄▄▄ Daniel asserts that appealing the denial of his post-conviction petition was rendered futile by an Illinois Supreme Court decision decided while Daniel's petition was pending with the trial court. The post-conviction petition relied heavily on the retroactive application of *Reddick*. The Court in *Flowers* applied the retroactivity rules of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and held that the constitutionally-based holding of *Reddick*—that the State should have the burden to disprove a voluntary manslaughter defense to obtain a murder conviction—should not be applied retroactively to post-conviction proceedings. *Flowers*, 149 Ill.Dec. at 312–14, 561 N.E.2d at 682–84. In *Flowers*, the highest court in Illinois directly addressed the constitutional argument presented by Daniel in his post-conviction petition. All Illinois appellate courts were bound by the *Flowers* holding. Thus, pursuit of the denial of Daniel's post-conviction petition would have been futile.[2] Accordingly, for purposes of bringing this habeas petition, it was unnecessary for Daniel to appeal the denial of his post-conviction petition.[3]

▄▄▄ This adverse precedent is not mitigated by *Taylor v. Gilmore*, 954 F.2d 441 (7th Cir.1992), where the Seventh Circuit, also relying on the *Teague* retroactivity principles, held that the holding of *Falconer*—that the Illinois murder/manslaughter pattern jury instructions violated the Due Process Clause—is entitled to retroactive application. *Id.* at 453. Illinois courts are not bound by decisions of federal courts other than the United States Supreme Court. *People v. Brisbon*, 129 Ill.2d 200,

---

1. The State concedes that "exhaustion is probably not at issue in this case." (Mem. of Law in Support of Denial of Writ, p. 5.)

2. Failure to appeal the denial of post-conviction relief could also be characterized as failure to exhaust state remedies. *See Mattes v. Gagnon*, 700 F.2d 1096, 1098–99 n. 1 (7th Cir.1983). Futility brought about by adverse precedent is sufficient to make such exhaustion unnecessary. *Id.* Thus, the futility of appealing the denial of

post-conviction relief is excused whether the failure to appeal is considered a procedural default or a failure to exhaust state remedies.

3. Moreover, "fundamental fairness" requires that the "grave" constitutional error at issue here be corrected despite any procedural default. *Rose*, 910 F.2d at 402–03, citing *Reddick*, 122 Ill.Dec. at 7, 526 N.E.2d at 147.

135 Ill.Dec. 801, 812, 544 N.E.2d 297, 308 (1989). Therefore, an Illinois appellate court considering Daniel's post-conviction petition must follow the Illinois Supreme Court's decision in *Flowers*, and not the Seventh Circuit's decision in *Taylor*.

Although the Seventh Circuit's opinion in *Taylor* is not precedent that an Illinois court must follow, it is binding on this court. In light of the holding in *Taylor* that *Falconer* be applied retroactively, this court finds *Falconer* applicable to this case despite the fact that Daniel's conviction became final prior to *Falconer*.

■ As for the "actual prejudice" prong of the procedural default bar to federal habeas claims, the Seventh Circuit has found that the constitutional errors in the Illinois murder/manslaughter pattern jury instructions are "inherently prejudicial." *Taylor v. Gilmore*, 954 F.2d at 454; *Fleming*, 924 F.2d at 683; *Rose*, 910 F.2d at 403; *Falconer*, 905 F.2d at 1137. Furthermore, the trial judge, by granting Daniel's request for a voluntary manslaughter instruction, apparently believed that there was enough evidence to support such a verdict. Because of the inherent prejudice, the court must reject the State's contention that the use of the jury instructions at issue constituted harmless error.

## CONCLUSION

For these reasons, Daniel's petition for a writ of habeas corpus is GRANTED. The writ shall issue unless the State of Illinois has petitioner resentenced for voluntary manslaughter or retries him within 120 days of this order. *See Falconer*, 905 F.2d at 1137.